## CITY OF HOUSTON v. F. S. GLOVER.

### Decided June 22, 1905.

**1.—Municipal Corporation—Creating Indebtedness—Architect's Plans.**

The employment by a city of an architect to prepare plans for a proposed public building is not, where it was intended that the services should be paid for out of the city's current revenues, the creation of a debt coming within the purview of the constitutional provision prohibiting the creation of a debt by a municipal corporation unless at the time a tax be levied to pay the interest and create a sinking fund for the payment of the principal. Const., art. 11, secs. 5, 6.

**2.—Same—Adoption of Plans—Reference to Board—Two-thirds Vote.**

Where a city charter provided that plans for public improvements should be referred to the board of public works and that its recommendation thereon should be final unless altered or changed by a two-thirds vote of all the aldermen, and that no plans should be adopted until reported on by the board or

until the expiration of fifteen days from the time the plans were referred to the board, and certain plans were referred to the board and no report thereon made by it, and after fifteen days the council adopted the plans, this was sufficient without showing that the adoption was by a two-thirds vote.

**3.—Same—Contract for Plans for Public Building.**

The contract of employment to prepare plans for the building was separate and distinct from any contract to be made thereafter for the erection of the building, and hence its validity was not affected by the fact that the cost of the proposed building was to be in excess of $100,000, and that no election was held as required by the city charter to determine whether or not bonds should be issued to provide means for the construction of the building. Nor was the contract for the plans affected by a charter provision requiring that "all works of improvements and public works. the cost of which shall exceed $500, shall be let out by sealed bids to the lowest bidder."

**4.—Same—Building Never Erected.**

The fact that the city, after accepting the plans, decided not to use them, in no way affected its obligation to pay for the plans in accordance with its contract with the architect employed to prepare them.

Appeal from the District Court of Harris. Tried below before Hon. Norman G. Kittrell.

*T. H. Stone* and *W. J. Howard,* for appellant.—The employment by the city of Houston of the plaintiff Glover as an architect to provide and furnish plans and specifications for a market house and city hall for said city, and the agreement of said city to pay him for such services, was the creation of a debt by said city within the meaning of article 11, sections 5 and 7 of the Constitution of Texas. An attempt by a municipal corporation to create any debt against itself, where it does not at the same time make provision to assess and collect annually a sufficient sum to pay the interest thereon, and create a sinking fund of at least two percent thereon, is inoperative and void. Constitution of Texas, art. 11, secs. 5, 7; Howard v. Smith, 91 Texas, 15; McNeal v. City of Waco, 89 Texas, 83; City of Terrell v. Dessaint, 71 Texas, 770.

*Hutcheson, Campbell & Hutcheson* and *Andrews, Ball & Streetman,* for appellee.—1. The services of plaintiff as architect in preparing plans, for the city hall and market house, were not a part of the cost of such buildings, so as to make it necessary that a special fund be provided for the payment of the cost of the whole building, or even sufficient to pay for said services alone. If a special fund existed, properly chargeable with the payment of the expense of such new buildings, said fees might appropriately be paid out of such special fund; and in the absence of such fund, the services were of such character as might be properly paid out of the general revenues of the city. Smith v. Dickey, 74 Texas, 61; Price v. Kirk, 90 Pa., 47; Roeder v. Benberg, 6 Mo. App., 445; Rinn v. Electric Power Co., 38 N. Y. Supp., 345; 2 Am. & Eng. Enc. Law (2d ed.), 824.

2. When a city has either on hand or within its control, and reasonably collectible, sufficient funds with which to discharge a contract for architects' fees, it may enter into a valid contract for such services without the levy of a tax to pay fees. Corpus Christi v. Woesner, 58

Texas, 462; Waco v. McNeal, 89 Texas, 83; Gen. Laws, 20th Leg. (1887), p. 50; Houston City Charter, Acts 25th Leg., sec. 40.

3. The making of plans and specifications for the erection of a public building is not such a contract as is contemplated by section 37 of Houston city charter, or such as is required by said section to be let out by sealed bids, and said section of said charter has no application to the employment of an architect to make such plans and specifications. Special Laws of the 25th Leg., 1897, Houston City Charter, sec. 37; Mazette v. City of Pittsburg, 20 Atl. Rep., 693; Coar v. Jersey City, 35 N. J. L., 404; City of Detroit v. Hosmer, 44 N. W. Rep., 622.

PLEASANTS, ASSOCIATE JUSTICE.—This is a suit by appellee to recover against the appellant the sum of $7,400, alleged to be due him as compensation for plans and specifications for a city hall and market house, prepared and furnished by him under a contract with appellant. The following concise statement of the allegations of plaintiff's petition is copied from appellee's brief:

"That the city of Houston had, prior to July, 1901, owned a building used as a city hall and market house, situated on the market house block, in said city, and that this building was destroyed by fire. That in July, 1901, the city council had under consideration the matter of rebuilding the city hall and market house, and upon the report of a special committee, to whom the same had been referred, adopted a motion of Alderman Rue, 'that the mayor appoint an architect to prepare plans and specifications for a market and city hall building.'

"That under this authority the mayor appointed the plaintiff, and by a personal interview arranged with him to meet with the special market building committee appointed by the council, and to prepare plans and specifications for the market and city hall. Plaintiff immediately met said committee, together with the mayor, and had repeated conferences with them as to the kind and character of building desired, discussed plans with them, submitted to them preliminary sketches, and obtained their ideas, and finally reached an agreement with them as to the building desired. Then he prepared the plans, specifications and details, and submitted them to the committee with his estimate of the cost of the building, which was $240,000.

"That the committee, on November 6, 1901, reported to the city council, submitting the plans which had been prepared by plaintiff, the report of the committee was adopted, and the plans and specifications were referred to the board of public works. That the board of public works having failed, after more than fifteen days, to make any report, on February 3, 1902, a motion was made and carried that said plans and specifications be adopted, and the mayor authorized to advertise for bids. That on February 17, 1902, the report of the special market building committee, which had been directed to confer with the mayor, was adopted, to the effect that the mayor advertise for bids for the erection of the city hall and market house."

It was also alleged, (1) that at the time the mayor appointed and employed plaintiff, it was expressly agreed that his compensation for preparing the plans, specifications and details was to be 3½ percent

of the estimated cost of the building, and (2) that 3½ percent of the estimated cost of the building was the reasonable value of plaintiff's services. With reference to the manner in which payment was to be made, it was alleged, (1) that the city had sufficient funds to pay same out of its current revenue for each of the years 1901 and 1902; (2) that the city had a special market fund set apart for the purpose of building said market and city hall, sufficient to pay plaintiff's demand, without the levy and special tax; (3) that the old market house and city hall had been burned, and that the city held $40,000 of insurance policies on the same, which was due and collectible, and that this constituted a fund properly chargeable with this demand, and afforded a basis for the power given to the mayor to contract for plaintiff's services and for the city council to incur the obligation, either expressly or by implication, to pay for plaintiff's services.

In addition to the general denial, defendant's answer contained various special exceptions and pleas, the nature of which will be hereinafter disclosed. The trial court, after all the evidence had been introduced, instructed the jury to find for the plaintiff, and upon the return of a verdict as directed judgment was rendered accordingly.

The undisputed evidence sustains all of the material allegations of the plaintiff's petition before set out. The evidence as to what was understood by the parties at the time plaintiff was employed in regard to when he should be paid and from what source the money to compensate him would be derived, is as follows: Plaintiff testified that at the time he was employed nothing was said as to how or when he was to be paid; that there was nothing said as to what source the money was to come from, and he asked nothing about it, but supposed he was dealing with men who knew what they were doing, and that he would be paid.

No special tax was levied to provide funds with which to pay for the plans, and no special provision of any kind was made to pay plaintiff at the time the contract with him was entered into. On April 3, 1902, after the bids for the construction of the buildings submitted in response to the advertisement of February 17, 1902, had been rejected and the mayor directed to readvertise, the city council passed the following resolutions: Whereas, on or about the 5th day of August, A. D. 1901, the Honorable John D. Woolford, mayor of the city of Houston, acting for and on behalf of the city of Houston, and acting in accordance with the directions of the city council of Houston, being duly and legally authorized thereunto, did make and enter into a contract with F. S. Glover, of Harris County, Texas, wherein and whereby the said F. S. Glover was employed on behalf of the city of Houston to make, draft, prepare and finish plans and specifications for the city of Houston, for the erection of a market house and city hall, for which said services the said city of Houston agreed, bound and obligated itself well and truly to pay unto the said F. S. Glover the sum of three and one-half percent of the estimated cost of the buildings, for which plans and specifications were to be drawn by the said F. S. Glover, as aforesaid, and whereas, the said F. S. Glover has duly performed his part of the contract, and made, prepared, finished and furnished to the city of Houston the plans and specifications for a market

house and city hall for the city of Houston of the estimated value of two hundred and forty thousand dollars ($240,000), as evidenced by the estimate of the said architect and the bids of contractors and builders taken thereon, which said plans and specifications so made, prepared, finished and furnished by the said F. S. Glover, were delivered to the city of Houston and by the city council referred to the board of public works, and after a consideration of said plans and specifications by the said board of public works for more than fifteen days, said plans and specifications so prepared and furnished by said F. S. Glover, were duly considered by the city council of the city of Houston, and in all things duly and legally adopted, received and accepted by the said city of Houston, and said work of said F. S. Glover having been done in accordance with his employment by the city of Houston, and being in all things acceptable and satisfactory to said city, and having been duly and legally adopted and accepted by said city, and said sum of money contracted to be paid the said Glover now being due;

"Therefore, be it resolved by the city council of the city of Houston, that the mayor and finance committee be and they are hereby authorized and required to pay to the said F. S. Glover the sum of eight thousand four hundred dollars ($8,400), being in full for his services as architect in drawing, preparing, finishing and furnishing the plans and specifications made by him for the city of Houston, and adopted and accepted by said city, the said amount being three and one-half per cent upon the estimated cost of the buildings for which the said plans and specifications were prepared by the said F. S. Glover. Be it further resolved, that of the said sum of eight thousand four hundred dollars ($8,400) the sum of ($......) to be paid to the said F. S. Glover in cash, and for the remaining sum of ($......) the mayor of the city of Houston be and he is hereby authorized and required to execute and deliver to the said F. S. Glover the note of the said city, payable ...... days after date to F. S. Glover or order, for the sum of $...... without interest to maturity, and that said note be and the same is hereby authorized and required to be paid out of the current funds of the city of Houston, arising from taxes collected by the said city of Houston for the year 1902."

Shortly after this resolution was adopted there was a change in the city administration, and the new council decided not to use the plans prepared by plaintiff and refused to pay him the balance of $7,400 due him therefor under his contract with the former administration.

It is impossible to accurately state from the testimony in the record what were the revenue receipts of the city for the years 1901 and 1902. It appears, however, that in addition to the anticipated revenues from taxation for the year 1901 there was due the city the following amounts: From the Street Car Company on paving account, $80,000; insurance on the market house which had been destroyed by fire, $40,000. Of these amounts the city collected in 1902, $82,500 from the Street Car Company and $28,400 on the insurance claim.

It was shown that, including these amounts, the current revenues for each of said years exceeded the current disbursements of the city by a larger amount than that contracted to be paid plaintiff. It further appears that since 1887 the city had made no provision for a sink-

ing fund to pay its outstanding bonded indebtedness, and that the revenue derived from its bond tax in excess of the amount necessary to pay the interest on the bonds had been turned into the general fund and used to pay current expenses.

Defendant resisted plaintiff's claim in the court below on the following grounds: First, because the contract sued on is illegal and void in that it was an attempt by a municipal corporation to create a debt against itself without at the same time making provision for the assessment and levy of an annual tax sufficient to pay the interest thereon and to create a sinking fund of at least two percent for the payment of said debt at maturity. Second, because said contract, being a matter pertaining to public improvements, was required by the city charter to be approved by the board of public works, or, if disapproved by said board, to be authorized by a vote of two-thirds of the aldermen of the city, and it not having been so approved or authorized, is illegal and void. Third, that the contract is illegal and void because it grew out of the proposed construction of public works the cost of which would exceed $100,000 and the construction of which would require the issuance of bonds by the city, and no election to determine whether or not such bonds should be issued had been held as required by the city charter. Fourth, that the contract was illegal and void because it was a contract for a public work for the city providing for the expenditure of a greater amount than $500, and was not let out on a sealed competitive bid as required by the city charter. These defenses were presented both by special exceptions to the petition and by special pleas.

We shall not consider appellant's several assignments of error in detail. In our opinion none of the objections urged to the judgment of the court below are valid. The employment of appellee by the city to prepare plans and specifications for the buildings which it proposed to construct was not the creation of a debt in the purview of sections 5 and 7 of article 11 of the Constitution which prohibits the creation of a debt by a municipal corporation unless at the time of its creation a tax be levied to provide a fund to pay the interest and create a sinking fund for the payment of the debt at maturity. The fees paid the architect for the preparation of plans and specifications may properly be regarded as a part of the general expense of constructing the buildings, but the contract for the payment of such fees may, as in this case, be entirely distinct from the contract for the erection of the building, and its validity in no way depends upon the validity of the building contract.

We think both the pleadings of plaintiff and the undisputed evidence show that it was the intention of the parties that plaintiff should be paid for his services out of the current revenues of the city, and there was no attempt to create a charge against future revenues, and therefore the article of the Constitution above referred to has no application. City of Waco v. McNeal, 89 Texas, 83; Corpus Christi v. Woesner, 58 Texas, 462; Smith v. Dickey, 74 Texas, 61; Price v. Kirk, 90 Penn. St., 47; Am. & Eng. Ency. Law (2d ed.), pp. 823-825.

The contention that the contract with plaintiff was illegal because it was not approved by the board of public works, or not shown to have been authorized by the vote of two-thirds of the aldermen of the

city after rejection by said board, can not be sustained. The section of the city charter under which the contention is urged is as follows: "There shall be appointed by the mayor and confirmed by the city council, three citizens of the city, who shall constitute a board of public works. They shall hold their offices for two years, and until their successors are appointed, and shall serve gratuitously. They shall be allowed, however, $500 annually, or so much thereof as may be necessary, to cover any expense incurred in the performance of their duties. All matters pertaining to public improvements involving an outlay of as much as $500, shall be referred to said board before they are finally approved by the council; and they shall, within fifteen days thereafter, make their report thereon, and such recommendations as they may deem expedient. They shall examine and pass upon all plans and specifications relating to such improvements, and on bids for the work embraced therein; provided, that the recommendation of the board of public works, as reported to the council, shall be final, unless altered or changed by a two-thirds vote of all the aldermen; and after the completion of any such work shall examine and report whether the same has been completed according to contract; and no plans and specifications for any such work shall be adopted, bids accepted, contracts awarded or work accepted for any such improvement until the report of said board in reference to said matters shall have been received by the council, or until after the expiration of fifteen days after the matter was referred to them. Said board may also originate and suggest public improvements, and prepare and recommend plans therefor, including all matters pertaining to their construction."

The undisputed evidence shows a compliance with this provision of the charter. The plans and specifications were referred to the board of public works for approval, and after more than fifteen days had elapsed and said plans had not been disapproved or acted upon by the board, the city council, as it was authorized to do under the terms of the charter, adopted said plans. Special Laws 25th Leg., p. 53.

As we have before stated, the contract for the plans and specifications was separate and distinct from any contract that might thereafter be made for the construction of a market house, and its validity is not affected by the fact that the cost of the proposed building was in excess of $100,000, and that no election was held as required by the city charter to determine whether or not bonds should be issued to provide means for the construction of said market house.

The section of the city charter which provides "that all works of improvements and public works for said city of Houston, the cost of which shall exceed the sum of five hundred dollars ($500), shall be let out by sealed bids to the lowest bidder, whom the council in its discretion may deem best," has no application to the employment by the city of an architect to prepare plans and specifications for a public building. The term "works of improvements and public works" clearly refers to the construction of public buildings and other permanent improvements. We think this is manifest from the succeeding clause in the section which provides that "work of which it is manifestly impossible to make specifications is not embraced in this requirement."

We are of ouinion the undisputed evidence establishes appellee's

right to compensation for his services, and shows that the amount claimed by him is the amount agreed to be paid him by the appellant, and is also the reasonable value of the plans and specifications which were prepared by him and accepted by the city. The fact that the city afterwards decided not to use said plans in no way lessens its obligation to pay appellee therefor in accordance with its contract and agreement.

We are of opinion that the judgment of the court below should be affirmed and it is so ordered.

*Affirmed.*

Writ of error refused.