TOOLE v. FIRST NAT. BANK OF HEMP-
HILL et al.   (No. 6563.)

(Court of Civil Appeals of Texas.  Galveston.
May 21, 1914.  Rehearing Denied
June 25, 1914.)

1. COUNTIES (§ 170*)—WARRANTS—INDORSERS
—LIABILITY.

A petition in an action on a county warrant brought against the county and indorsers, which shows that the suit was not brought at the first term of the court after the maturity of the warrant, but which alleges the invalidity of the warrant as against the county because issued under an illegal contract, states a cause of action against the indorsers, who are liable as original obligors, and not within the protection of Rev. St. 1911, arts. 579, 583, 584, requiring an action at the first term of the court after the accrual of a cause of action to fix the liability of an indorser.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 256–259; Dec. Dig. § 170.*]

2. BILLS AND NOTES (§ 299*)—INDORSERS—
ACTIONS—TIME TO SUE—STATUTORY PROVI-
SIONS.

Rev. St. 1911, arts. 579, 583, 584, requiring the bringing of a suit at the next term of court after the accrual of the right of action to fix the liability of an indorser, is a substitute for protest under the law merchant, and does not apply in a case in which protest is not required, and, where a maker is insolvent or a nonresident, protest and notice or suit at the first term of the court are not necessary to hold an indorser.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 680–705; Dec. Dig. § 299.*]

3. COUNTIES (§ 167*)—WARRANTS—COLLEC-
TION.

Where a bank contracting with a county as depository of the county funds to keep all county warrants at par purchased, to comply with its contract, all county warrants offered to it, and, when a particular warrant was presented by an individual, an officer of the bank requested the individual to indorse it, and on his doing so the amount thereof was paid to him, and the warrant was carried by the bank as an asset, and where the warrant was void, he must refund the money to the bank and cannot

escape liability on the theory of a sale to the bank.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 249; Dec. Dig. § 167.*]

4. COUNTIES (§ 150*)—CONTRACTS—VALIDITY —"DEBT."

A contract for the drilling for a county of an artesian well in the courthouse square, executed at a time when there was not sufficient revenue on hand or to be collected for the year with which to pay the price, creates a debt within Const. art. 11, §§ 5, 7, and, when no provision is made for the payment of the debt, the contract is void.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 165, 166, 215–217; Dec. Dig. § 150.*

For other definitions, see Words and Phrases, vol. 2, pp. 1864–1886; vol. 8, p. 7628.]

Appeal from District Court, Sabine County; A. E. Davis, Judge.

Action by the First National Bank of Hemphill against J. O. Toole and others. From a judgment for plaintiff against defendants Toole and another, and in favor of codefendant Sabine County, defendant Toole appeals. Affirmed.

Davis & Ramsey, of San Augustine, and D. M. Short & Sons, of Center, for appellant. Foster & Davis, of San Augustine, for appellees.

PLEASANTS, C. J. This is a suit by appellee First National Bank of Hemphill to recover upon a warrant for $2,000 issued by Sabine county in favor of D. A. Smith and transferred and indorsed by said Smith to appellant, Toole, and indorsed by said Toole and sold by him to appellee bank. The amended petition upon which the case was tried alleges the issuance and delivery of the warrant by Sabine county to Smith in payment of an indebtedness due him by the county, the registration of the warrant by the county treasurer, the transfer and indorsement by Smith to appellant, Toole, and the indorsement and sale of said warrant by Toole to appellee bank, and prays for judgment against the county, as maker, and against Smith and Toole as indorsers, for the amount of said warrant, and interest thereon.

In the alternative plaintiff pleaded in substance:

"That the warrant for $2,000 was issued by the county of Sabine under a contract made by the commissioners' court of said county with defendant Smith on October 31, 1910, by the terms of which Smith agreed to drill an artesian well on the public square, upon which is situated the courthouse of said county, and guaranteed an artesian flow of water, and agreed to bear all the expense of drilling the well, and to furnish the machinery necessary to drill the well, and to proceed to drill the well at once until a good flow of artesian water was developed, and to furnish a gate valve to be attached to casing, and when the conditions should be complied with, and the well accepted by said county, said court was to pay said Smith for said services the sum of $7,500, as follows: When the derrick and machinery shall be put on the ground, $2,000; when the well shall be drilled at a depth of 500 feet,

$1,000; when the well shall be drilled 1,000 feet, $2,000; and the balance to be paid when the well shall have been completed. That this contract created a debt within the meaning of the Constitution of the state, and no provision was made by the county, at the time of its creation, to pay the sum, and it was not contemplated that the contract price should be paid from the current revenues of the county, which were inadequate to pay the contract price as it matured, and the condition of the revenues either was known to the commissioners' court, or, by the exercise of reasonable diligence, could have been known, when the contract was made, and that the said Smith did not believe, or have reasonable grounds to believe, that the current revenues were sufficient to pay the sums of money called for in said contract, and that neither of the parties could have had any reasonable expectation that the contract price could have been discharged out of any current revenues then on hand, or that would come in, and that the drilling of the well, as contemplated by the contract, did not constitute an ordinary current expense of the county. That said warrant, though regular on its face, and issued by apparent authority, was void, because the contract under which it was issued created a debt, and, no provision being made for its payment, said contract was void. That plaintiff purchased said warrant in good faith without any notice of any irregularity in its issuance, and paid therefor the sum of $2,000, and that defendants Smith and Toole, by the indorsement of said warrant, became liable and bound to pay to plaintiff the said sum of $2,000, with interest thereon, for which amount plaintiff prays judgment against said defendants."

The answer of defendants Smith and Toole contained the following special exceptions to plaintiff's petition:

"First. That the petition alleged the date of their indorsement to be on the 17th day of November, 1910, and the suit was not filed on said indorsements at the first term of the court after the maturity of said warrant, nor was there any suit filed at the second term thereafter, nor any reason given why suit was not filed at the first term.

"Second. This being a suit on a county warrant, payable on demand, after being duly registered, it being alleged that the warrant was registered on the same day it was issued, whereby its status as a county demand against public funds was definitely established, and this suit not having been filed until the 8th day of September, 1911, the warrant could have been paid on the 17th day of November, 1910, or some good reason alleged why it was not paid, and two terms of court having passed before this suit was filed, and no reason is alleged why suit was not sooner filed, by reason of which the petition is defective, in failing to allege the facts constituting diligence, or excusing the reasonable diligence required by the plaintiff to establish any liability caused thereof by either of these defendants."

They further answered by general denial, and by special plea adopt that portion of plaintiff's petition which alleges facts showing that the contract between the county and Smith was valid, and that the warrant was legally and regularly issued, and was a valid and binding obligation of the county. They further specially pleaded as follows:

"And for further special answer come these defendants and say that this suit was not filed against them until the 8th of September, 1911, and that two terms of the court elapsed after the pretended cause of action set up against

them had matured before this suit was instituted, and it appears that plaintiff's claim is founded upon a pretended assignment or indorsement of a certain obligation, in writing, the legal effect of which, under the plaintiff's contention, even passed out of existence after the second term of the court had passed at which the suit could have been brought, and these defendants now plead these facts in bar of the plaintiff's right to hold them, or either of them, liable as indorsers or assignors of said writings; all of which they propose to verify.

"And for further special answer to plaintiff's demand as to them, they come and say that said warrant has been paid in so far as they are concerned, and has ceased to be the evidence of any demand against Sabine county, because they say when it was issued and delivered to the defendant D. A. Smith, as alleged, it was then duly registered and for a valuable consideration delivered to the defendant J. O. Toole by the defendant D. A. Smith on the same day it was issued and registered; and thereafter, on the same day, the defendant J. O. Toole presented it for payment to A. M. Jones, the duly acting deputy treasurer of Sabine county, who paid the same by delivering to the said defendant the amount of money called for in said warrant; and, as evidence of the receipt of said money, the defendant J. O. Toole wrote his name on the back of said warrant, not with any intention of guaranteeing any one against loss, nor with any intention of conveying title except by receipting for the money demanded, but merely following a custom of the treasurer of Sabine county, used by him in identifying pieces of paper, upon the authority of which he had paid out money belonging to the county to individuals, and with the view of determining the individual to whom the money had been paid and the amount of it, and being, in effect, a receipt. So these defendants say that the above is their connection with the piece of paper, and their only connection with it, and that they made no contract with any one to guarantee the payment of said piece of paper; nor was it intended by them, or either of them, to make themselves liable for any amount of money by virtue of any act done by them with reference to said piece of paper, except in the manner above stated; all of which they stand ready to verify.

"And for further special answer to said petition, if they are mistaken in their contention of release of liability by the failure to bring suit against them, or in their contention of the payment of the warrant as set forth in this special answer herein, then the defendants come and say that plaintiff paid said warrant through its cashier, A. M. Jones, upon presentation of said warrant for payment to the plaintiff by the defendant J. O. Toole, as hereinbefore stated, in compliance with and obedience to the terms of its certain valid and subsisting contract theretofore made with the duly authorized agent of the defendant county to pay all of latter's warrants in full upon presentation by the legal holder thereof, among which class was the warrant described in plaintiff's petition; and that plaintiff, in accepting said warrant thus presented for said purpose, was merely carrying out its said contract with the county by paying over the said amount in said warrant mentioned to the legal holder thereof in compliance with its said obligation assumed in said contract with the county, and was not making, and did not make, any contract whatever with the defendant J. O. Toole, nor did the defendant J. O. Toole make any contract with the plaintiff, nor was he asked to make any contract with the plaintiff, either expressed or implied, with reference to said piece of paper, nor did either party intend to make any contract with each other when said warrant was presented and paid, or when said warrant was presented by the

defendant J. O. Toole and accepted by the plaintiff, nor when the defendant Toole accepted the money mentioned in said warrant; but, on the contrary, the transaction occurred and was understood by the parties to mean that which is hereinbefore alleged; all of which these defendants stand ready to verify."

The defendant county filed its answer, including a general demurrer, the plea of non est factum, a general denial, and specially that the contract was void because the commissioners' court created a debt against the county without providing for its payment.

The trial in the court below without a jury resulted in a judgment in favor of the defendant county that plaintiff take nothing against it, and in favor of plaintiff against the defendants Smith and Toole for the amount of said warrant, with interest.

The following conclusions of fact filed by the trial judge are supported by the evidence, and we adopt them as our fact conclusions:

"(1) I find that the warrant of Sabine county for $2,000, dated November 17, 1910, which was introduced in evidence, and upon which plaintiff sues, was issued by L. E. King, the county clerk of said county, acting by and through his duly appointed and qualified deputy, W. R. Hyden, under the seal of the commissioners' court of said county, to the defendant D. A. Smith, or bearer; that the said warrant was issued by the said Hyden, deputy clerk, upon the written order of J. H. McGown, county judge of said county, directing the issuance of same; that the said warrant was in all respects regular upon its face, and imported a valid obligation of the said county.

"(2) I find that after the issuance of the aforesaid warrant the same was, for a valuable consideration, indorsed, transferred, and assigned by the said D. A. Smith to the said J. O. Toole, and that thereafter the said Toole sold and delivered the said warrant to the plaintiff First National Bank of Hemphill, Tex., the plaintiff paying him therefor the sum of $2,000 in cash, and that the defendant Toole was required and did indorse by writing his name upon the back thereof of said warrant to the plaintiff before the said $2,000 was paid to him by the plaintiff, and that the plaintiff would not have purchased the said warrant without the indorsement of the said Toole. That the warrant was presented at the teller's window of plaintiff's banking house by the said Toole, and purchased as aforesaid by one G. L. Davidson, the assistant cashier of the bank, who was acting for and on behalf of plaintiff.

"(3) That at the time the said Davidson, as assistant cashier of plaintiff, received the said warrant from the said Toole, with the said Toole's indorsement or assignment on the back thereof, paying therefor the sum of $2,000, as aforesaid, the said Davidson had no notice that the same was based and issued upon an illegal contract, as I shall find subsequently, and had no notice that there was any vice or irregularity whatever connected with the said warrant.

"(4) I find that on the same day on which the plaintiff purchased from Toole the said warrant the plaintiff caused the same to be registered in the office of the treasurer of Sabine county as provided by law, and caused the fact of such registration to be noted upon the warrant by the treasurer, which was done on the 17th day of November, 1910, being the day the warrant was purchased from the said Toole.

"(5) I find that the plaintiff is the legal owner and holder of the aforesaid warrant, and has been such owner ever since the 17th day of

November, 1910; that prior to instituting this suit the plaintiff demanded payment of the warrant of the said Toole and of the treasurer of Sabine county, which was by them refused; that the commissioners' court of said county, by an order duly passed on December 6, 1910, canceled, rejected, and repudiated the contract upon which the warrant was issued, and plaintiff has been compelled to bring this suit to enforce collection thereof.

"(6) I find that the aforesaid warrant was issued to D. A. Smith in the attempted payment of the first installment due the said Smith by Sabine county under a certain contract entered into between the county and Smith during the month of October, 1910, to wit, October 31, 1910, by the terms of which the said Smith agreed to drill an artesian well in the town of Hemphill, Tex., on the public square owned by the county, guaranteeing an artesian flow of water, and agreeing to furnish all of the machinery, pipe, wood, and derrick, and to defray any other expense in drilling the well; that the county, acting by its commissioners' court, agreed on its part to pay for said completed well the sum of $7,500, to be paid as follows: When the machinery, pipe, and derrick should be placed on the ground, $2,000; when the well should reach a depth of 500 feet, $1,000; when the well should reach a depth of 1,000 feet, $2,000; and the balance when the well should be completed.

"(7) I find that at the time the contract, as mentioned in the paragraph next above, was entered into between D. A. Smith and Sabine county, acting through its commissioners' court duly assembled and constituted, there was not sufficient revenue on hand, or to be collected from all sources, available for the year 1910 with which to pay the contract price for said well; that on October 31, 1910, when the said contract was entered into, the treasurer's books showed a cash balance on hand to the credit of the general county fund of $3,808, but there were outstanding, unregistered warrants of the county aggregating $4,000 or $5,000 against said fund; that the current expenditures covered by warrants outstanding on October 31, 1910, plus the contract price for the well, $7,500, would exceed by about $5,000 or more the current revenue to the credit of the general county fund from all sources for the year 1910; that the commissioners' court, when said contract was entered into, did not have reasonable ground to believe that the contract price should be discharged out of the current revenue for the year 1910, and that they and the said Smith could not have reasonably contemplated its payment out of such current revenue; that the contract price could not have been paid except by appropriating a large part of the general county fund that accrued for 1911, by the regular ad valorem tax for the year 1911, and not otherwise; that when said contract was made no provision was made for levying a tax to pay the contract price.

"(8) I find that D. A. Smith substantially complied with the conditions of the contract required to be performed before he could be paid $2,000; that is to say, he had, before receiving the said warrant, placed the machinery, pipe and derrick on the ground in substantial compliance with the contract.

"(9) I find that after the county repudiated the contract on December 6, 1910, there was a regular term of the district court held in Sabine county, beginning in March, 1911, and I further find that plaintiff did not file suit upon the said warrant until September 7, 1911, which suit was brought in time for the September term, 1911, of said court."

By his first and second assignments of error appellant assails the judgment overruling his exceptions to the petition on the ground that, it appearing from the face of the petition that plaintiff's suit was not filed at the first term of the court after the warrant became due, and no cause being shown for not instituting the suit before the first term of the court after plaintiff's right of action accrued, appellant cannot be held liable as an indorser of said warrant.

[1] The petition shows that the suit was not brought at the first term of the court after the warrant became due and plaintiff's cause of action thereon accrued, and no reason is shown by the petition for not bringing the suit to the first term of the court, and, if the warrant was a valid, binding obligation of Sabine county the failure of the bank to bring the suit at the next term of the court after the cause of action accrued would release appellant from liability as indorser of the warrant. Articles 579, 583, and 584, Revised Statutes 1911. But the petition, as we have before shown, alleges in the alternative that the warrant, though regular on its face, was invalid, and not a binding obligation of the county, because it was issued under a contract which the county was not authorized to make, and which was illegal and void. Under these allegations the indorser of the warrant is liable as an original obligor, and the rule of diligence which requires that, in order to fix the liability of an indorser, suit against the maker or original obligor must be brought at the first term of the court after the cause of action accrues has no application. If a suit against the maker of a negotiable or nonnegotiable instrument could accomplish nothing, the indorser of said instrument could lose nothing by the failure of the holder to sue the maker, and in such case the reasons of the rule which requires the holder to protest the instrument for nonpayment or to bring suit thereon at the next term of court after the cause of action accrues does not exist, and the enforcement of the rule would require the doing of a vain and useless thing, and give no protection or benefit to the indorser. When the reason for a rule ceases the rule ceases to be applicable. In volume 4, Am. & Eng. Ency. Law, p. 447, it is stated:

"If a bill or note is void, e. g., as for forgery, usury, or want of proper stamp, an indorser thereof may be held liable without proof of demand or notice."

A similar doctrine is stated in Daniel on Negotiable Instruments, § 669a, and Parsons on Bills and Notes, 560. It seems to us that the soundness of this rule is obvious.

[2] Our statute which requires suit to be brought at the next term of the court after the right of action accrues is a substitute for protest under the law merchant, and does not apply in a case in which protest would not be required. Durrum v. Hendrick, 4 Tex. 499; Wood v. McMeans, 23 Tex. 484; Wells Fargo v. Simpson, 19 Tex. Civ. App. 636, 47 S. W. 1024; Bank v. De Morse (Civ. App.) 26 S. W. 417.

It is well settled by the decisions of the

Supreme Court of this state that, when the maker of a note is insolvent or a nonresident, protest and notice or suit at the first term of the court are not necessary in order to hold the indorser, but in such case the indorser may be treated as an original obligor. The ground upon which protest or suit is held unnecessary in all of the above-cited cases is that no injury could have resulted to the indorser by the failure of the holder of the obligation to protest it for nonpayment or to sue the maker at the next term of the court.

We think it clear that this principle is applicable to this case, and, the warrant issued by the county being void, the appellee bank was not required to comply with the rule of diligence prescribed by the statute in order to hold appellant liable for the amount paid him by the bank for said warrant.

[3] The third assignment of error complains of the finding of the trial judge that appellant, Toole, sold the warrant to appellee bank. The contention under this assignment is that appellant cannot be held as a seller and indorser of the warrant because the bank was the depository of the funds of the county, and appellant, Toole, testified, in substance, that in presenting the warrant at the bank, and indorsing his name thereon, and receiving the $2,000 therefor, he thought he was collecting the warrant from the county, and that he did not sell the warrant to the bank, and indorsed it only for the purpose of showing that he had received the money called for by said warrant.

The evidence shows that the bank, under its contract with the county as depository of the county funds, had obligated itself to keep all county warrants at par, and, in order to comply with this contract, it purchased at par all county warrants offered to it. When the warrant in question was presented to the assistant cashier of the bank, he requested the appellant to indorse it, and, upon appellant's compliance with the request, paid him $2,000 therefor. This was the bank's money, and the warrant was carried by the bank as an asset, and was used as collateral for borrowing money from one of the bank's correspondents. At the time the bank took the warrant and paid appellant therefor the county did not have sufficient funds to pay said warrant, and before payment was demanded by the bank the county had repudiated the contract under which the warrant was issued. We think the evidence fully sustains the finding of the trial judge that the bank purchased the warrant. Appellant may have thought, when he indorsed and presented the warrant to the bank and received $2,000 therefor, that he was collecting the money from the county, but the undisputed evidence shows that the bank paid its own money for the warrant, and appellant, having indorsed a void warrant and received the bank's money therefor, should not be permitted to retain the money on the ground that when he received it he supposed it was paid him by the county. The assignment is overruled.

[4] Under appropriate assignments of error appellant further assails the judgment, on the ground that the evidence does not sustain the finding of the trial judge that at the time the contract under which the warrant in question was issued was executed— "there was not sufficient revenue on hand or to be collected from all sources available for the year 1910, with which to pay the contract price for said well; that on October 31, 1910, when the said contract was entered into, the treasurer's books showed a cash balance on hand to the credit of the county fund of $3,808, but there was outstanding in registered warrants of the county aggregating $4,000 or $5,000 against said fund; that the current expenditures covered by warrants outstanding on October 31, 1910, plus the contract price for the well, $7,500, would exceed by $5,000 or more the current revenue to the credit of the general county fund from all sources for the year 1910; that the commissioners' court, when said contract was entered into, did not have reasonable ground to believe that the contract price could be discharged out of the current revenue for the year 1910, and that they and the said Smith could not have reasonably contemplated its payment out of such current revenue; that the contract price could not have been paid except by appropriating a large part of the general county fund to accrue for 1911, and otherwise; that when said contract was made no provision was made for levying a tax to pay the contract price."

The undisputed evidence shows that no provision was made by the county at the time the contract was executed for the payment of the debt created thereby. The evidence further shows that the assessed value of all taxable property in Sabine county for the year 1910 was $4,807,206, and for 1911 $4,895,221. A tax of 20 cents on the $100 was levied for 1910, and 25 cents for 1911. The bookkeeper for the county treasurer testified that from November 8, 1909, to November 14, 1910, receipts from all sources amounted to $9,328.59, and disbursements for said period were $14,196.95, and from November 14, 1910, to November 13, 1911, receipts were $10,393.31, and disbursements $11,471.64. He further testified the average yearly receipts for 1909, 1910, and 1911 were $8,483, and the average ordinary expenses of the county for those years were $8,993.

On November 14, 1910, the balance in the general county fund was $1,226.36, and there were outstanding warrants which had been issued against this fund of from $6,000 to $7,000. We fail to find in the record any evidence from which it can be concluded that there was any fund on hand at the time the contract was made, or that the current revenues for the year 1910 would produce a fund available for that purpose out of which the debt created by the contract could be paid. This being so, neither the commissioners nor Smith had reasonable grounds to believe, or could have reasonably contemplated, that the contract price of the well

could be paid out of the current revenues of the county. A contract for permanent improvements, of the character provided for in this contract, executed when there are no existing or prospective funds derived from the general current revenues of the county available to meet the obligation imposed on the county by such contract is the creation of a debt within the meaning of the Constitution, and, when no provision is made for the payment of the debt, the contract is void. Constitution of Texas, §§ 5 and 7, art. 11; McNeal v. Waco, 89 Tex. 83, 33 S. W. 322; Terrell v. Dessaint, 71 Tex. 771, 9 S. W. 593; Pendleton v. Ferguson, 99 Tex. 296, 89 S. W. 758; Howard v. Smith, 91 Tex. 15, 38 S. W. 15; Tyler v. Jester, 97 Tex. 344, 78 S. W. 1058; Biddle v. City of Terrell, 82 Tex. 336, 18 S. W. 691; Edwards County v. Jennings, 89 Tex. 619, 35 S. W. 1053; Ault v. Hill County, 102 Tex. 336, 116 S. W. 359; City of Tyler v. Building & Loan Co. (Civ. App.) 82 S. W. 1066; Peck-Smead Co. v. City of Sherman, 26 Tex. Civ. App. 210, 63 S. W. 340; Mineralized Rubber Co. v. City of Cleburne, 22 Tex. Civ. App. 621, 56 S. W. 220; Corpus Christi v. Woessner, 58 Tex. 462.

It would serve no useful purpose to discuss the remaining assignments of error presented in appellant's brief. What we have said disposes of the material questions raised by the record. Each of appellant's assignments have been duly considered, and none of them should, in our opinion be sustained. It follows that the judgment of the court should be affirmed, and it has been so ordered.

Affirmed.