TACKETT v. MIDDLETON et al.*    '
(No. 10977.)

(Court of Civil Appeals of Texas. Fort Worth. Feb. 28, 1925. Rehearing Denied April 4, 1925.)

1. Municipal corporations ⬅➡868(1)—"Debt," which may not be created without provision for payment, defined.

Any obligation created by city government which cannot be discharged from revenues of current year, and which matures at a period which would make it a charge on city revenues for future years, is a "debt," within Const. art. 11, §§ 5, 7, inhibiting creation thereof, unless at the same time provision be made for an annual tax to pay interest thereon and create a sinking fund.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

2. Municipal corporations ⬅➡868(1)—Allegations necessary to show employment of architect was not creation of debt, requiring provision for tax, stated.

Architect, claiming under contract for services to a city in construction of 'schoolhouse, to show that his employment was not the creation of a debt inhibited by Const. art. 11, §§ 5 and 7, unless at the same time provision be made for a tax therefor, should allege that it was contemplated by him and the city council that he should be paid out of the current revenues, and show that there was on hand out of the revenues for that year a sufficient sum available to pay him for such services.

3. Municipal corporations ⬅➡868(1) — Architect's pleading insufficient to show his employment was not creation of debt, requiring provision for tax.

Pleading of architect that at time of his contract of employment by city for services in erection of schoolhouse there was on hand $27,000 derived from sale of bonds for erection and equipment of the building, held insufficient to show there was on hand a sufficient sum available to pay for his services, so as to save contract from inhibition of Const. art. 11, §§ 5, 7, against creation of city debt without provision for tax; pleadings showing that building would cost more than sum on hand, and no more than a proportional part of it being available to pay his commission.

4. Appeal and error ⬅➡662(2)—Under recital of judgment held that it could not be said admissions of party did not justify judgment.

Under judgment reciting that it appeared "from the admissions of the parties" and from the pleading "that all the allegations of the petition are substantially true," appellate court cannot say party did not admit allegation, justifying judgment against him.

On Appellants' Motion for Rehearing.

5. Municipal corporations ⬅➡868(1)—Debt, within meaning of Constitution, forbidden by charter as to appropriation before contract.

A "debt," within the meaning of Const. art. 11, §§ 5, 7, is forbidden by charter of city of

Gainesville, art. 2, § 28, providing no contract shall be entered into till, or in excess of, an appropriation therefor.

Appeal from District Court, Cooke County; C. R. Pearman, Judge.

Action by W. K. Middleton and another against W. A. Tackett and others. From an adverse judgment, the named defendant appeals. Affirmed.

Webb & Webb, of Sherman, and W. L. Blanton, of Gainesville, for appellant.

J. T. Adams, W. O. Davis, and James Ralph Bell, all of Gainesville, for appellees.

BUCK, J. Plaintiffs W. K. Middleton and H. E. Bertram, as residents of Cooke county, and complaining of W. A. Tackett, a resident of Grayson county, and the mayor and the members of the city council of Gainesville, and the city secretary and the city treasurer, filed this suit, praying for an injunction against the defendants named from allowing and paying any claim filed by defendant Tackett for work done or claimed to be done in the furnishing of a certain high school building erected by the city of Gainesville under the direction of the city council, and furnished, including the furniture and equipment, by the school trustees of said city, under the direction of said city council. It was alleged that the city of Gainesville is a city of more than 5,000 and less than 10,000 inhabitants, incorporated under a special act of the Thirty-First Legislature, approved March 17, 1909, c. 81, and soon thereafter adopted by vote of the people. That J. A. Thomas is mayor of said city, F. M. Savage is secretary, and Frank Morris, Jr., is treasurer, and the other defendants, except Tackett, are members of the city council. That on February 24, 1921, the qualified taxpaying voters of said city, at an election for that purpose, authorized the issuance of $150,000 of 40-year bonds, bearing interest at the rate of 5 per cent. per annum for the purpose of remodeling, repairing, improving, and equipping the Newsome Dougherty High School, a residence which had been recently donated to the city for high school purposes. On September 1, 1921, said city council entered into a contract with the J. E. Johnson Construction Company for the construction and improvement, and with other persons for the wiring and plumbing thereof, which called for the expenditure of $18,821 in excess of the net proceeds of said bonds. That said improvements under said contract were to be completed by October 1, 1922, but no provision was made at the time of making said contract, or at any time, for the assessment and collection of any tax to pay for the cost of said improvements in excess of the proceeds of said bond issue, nor was any appropriation made for said excess, as required by section 28, article 2, of said special act of the Legislature, being the charter of said city, nor was there any possibility, hope, or expectation of paying for such excess out of the current revenues for the years 1921 or 1922, or out of funds on hand for that purpose.

On June 29, 1921, said city council entered into a contract with the defendant Tackett by which they agreed to pay said Tackett a commission of 5 per cent. on the costs of said improvements, including wiring, plumbing, and furnishing, to be paid as the work progressed out of the proceeds of the bond issue, but no appropriation was made for the payment of said commission, as prescribed by said charter, nor was any provision made for the assessment and collection of any tax to pay the same, nor was there any hope, possibility, or expectation that said commission could be paid out of the current revenues for the years 1921 and 1922. That said Tackett had already been paid $7,484.-60 out of the proceeds of said bond issue for his services as architect, and the entire proceeds of said bond issue had been applied to the payment for said improvement, and that a balance was left unpaid of $19,-821.10, including the $800 claimed by the defendant Tackett as his architect fee for supervising the installation of the furnishings and equipment. That Tackett claimed the word "furnishings" mentioned in his contract with the council included the furniture and equipment purchased, not by the city council of Gainesville, but by the school trustees of said city, out of the public free school fund, after the completion of said building, although his services were not requested by said trustees, and were of but little, if any, value to said trustees in the selection and purchase of said furniture. That upon the completion of said improvements the city of Gainesville did not provide the furniture for said building and were without funds to do so, but the furniture and like equipment were purchased and paid for by the school trustees out of the public free school fund under their charge and control.

It was further alleged that defendant Tackett had presented to said city council a claim for the sum of $800 as his commission of 5 per cent. on the costs of the furniture so purchased by said trustees out of the school funds, with which it was alleged the council had nothing to do, and, unless restrained, a majority of said council will approve and allow said claim, and the defendant Savage, as secretary, will sign a warrant therefor, and the defendant Morris, as treasurer, will pay the same, and thus the city of Gainesville will be illegally defrauded of the sum of $800.

It was further alleged that said claim is unjust, and that defendant Tackett rendered no service entitling him to the sum of $800, and that the claim is illegal and not binding

upon' the city of Gainesville, because at the time of the making of said contract the same was not intended to be paid out of the current revenues for that year, but it was expected to be paid either from the proceeds of said bond issue or out of the taxes of future years, and that no appropriation was made to meet said claim or other provision made for its payment. The petition was verified, and a temporary injunction was issued.

Defendants Ed Nelson and W. O. Davis, alleged to be members of the city council, filed an answer admitting the allegation in the petition of plaintiff to be true, and stating that they did not then and never did favor the allowance of the claim mentioned in the petition.

Defendants J. A. Thomas, mayor, and the members of the city council, the city secretary and the city treasurer, filed an answer consisting of a general demurrer and general denial. The defendant Tackett filed an answer consisting of a general demurrer and certain special exceptions, and further pleaded a cross-action. He alleged that it was true, as alleged in plaintiff's petition, that the city council of Gainesville had entered into a written contract with the defendant by which it was agreed to pay him a commission of 5 per cent. on the cost of said improvements, including plumbing and furnishings, and that said commission was to be paid, 3½ per cent. in the beginning, and 1½ per cent. as the work progressed. He denied that it was true, as alleged, that no appropriation was made for the payment of said commission as prescribed by the city charter; and denied that no provision was made for the assessment and collection of any tax to pay the same, and denied that there was no hope, possibility, or expectation that said commission could not be paid out of the current revenue for the years 1921 and 1922. He alleged that it was true, as alleged in plaintiff's petition, that he claimed that the word "furnishings," mentioned in his contract with the city council, included the furnishing and equipping of the said public school building, but that he did not claim that said contract contemplated that said furnishing should be made by the school trustees of Gainesville, and not by the city council. He further alleged that it was not true, as alleged in plaintiff's petition, that his services were not requested by the trustees, and that they were of but little, if any, value to said trustees in the furnishing of said building. He alleged the facts to be that on or about December 15, 1921, he, at the special request of the city council of the city of Gainesville, made plans and specifications and estimates for the erecting and equipping of a public school building in said city; that according to the said estimates the building, including the heating, lighting, etc., would cost the sum of $162,500; the furnishing and equipping, an additional sum

of from $15,000 to $20,000, according to the character of material to be used, totaling a minimum of $177,500. That thereafter the city ordered a bond election of $150,000 to supplement funds it then had on hand, subject to said expenditure, and funds that it could legally otherwise raise for the purpose of erecting, furnishing, and equipping said building; that said bond election was carried on February 24, 1921, and before the 29th day of June, 1921, the date of defendant's contract of employment with the city, the said city had sold $27,000 worth of said bonds, and had that amount in its treasury. That at frequent intervals, between the time when this defendant furnished the said city of Gainesville with his said estimates and the date of said contract, defendant had frequent consultations with the city council of said city with reference to the erection and equipment of said building, and it was thoroughly understood by and between the said parties that there would be needed a sum approximately of $177,500 to complete said work, and that according to the calculation of said city council it was in a position to raise and apply that amount of money for the work by the said bond issue and by the issuance of other funds and warrants then available. He pleaded his contract, and attached a copy of the same to his pleadings, but nowhere did he specify what particular funds were available to pay for the erection and equipment of the building, except the proceeds from the bond issue.

The city of Gainesville filed a separate answer, and admitted the allegations in said petition to be true, and prayed for such other relief as it might be entitled to in the premises. As to the defendant Tackett's cross-action it pleaded a general demurrer, and especially pleaded that in said cross-answer it was alleged that the bond issue aggregated $150,000, and the cost of the proposed building and furnishing was $177,500, yet it was not shown in what way or in what manner the city provided for the payment of the excess. It further specially excepted to said cross-action, in that it did not show that the city had appropriated for the purpose of said school building the $27,000 alleged to be on hand, nor did it show that the claim sued on could have been paid from the revenues of the current year, or that any provision was made for its payment out of the revenues of future years. It was further alleged that only the sum of $140,250 was realized out of the $150,000 issue of bonds, and that said amount fell far short of meeting the total cost of said building; neither at the time when said contract was let, nor at any time since, were there on hand belonging to the city any funds other than the proceeds of the bond issue out of which the cost of said building could be paid. That the city of Gainesville was under no obligation to furnish the high school building in order that

defendant Tackett might receive a commission on the furniture and furnishings, and that it did not have any funds on hand with which to furnish said building, and it did not do so, and so informed said Tackett. That, if said building was in fact furnished, it was done by the school trustees of the city of Gainesville, which is an independent school district, and out of the school funds over which the city council has no control. That under section 28, article 2, of the charter of Gainesville, the city council cannot enter into any contract until an appropriation has been made to pay therefor, and it is further provided that, whenever an appropriation providing for any contract is exhausted, no further contract shall be signed by the mayor. That no appropriation was ever made for the erection of the high school building, unless the issuance of the bonds for that purpose constitutes such appropriation, but the proceeds of the bonds were exhausted in paying for the work on the school building as it progressed, and a deficiency had been incurred before the completion of such building and before the necessity for the same arose.

Plaintiffs filed, in addition, their first supplemental petition, containing some allegations not necessary here to notice.

The trial court made the temporary injunction theretofore issued permanent, and sustained the exception of the city of Gainesville and of the plaintiffs to the cross-action and petition of defendant Tackett, and in the course of the judgment said:

"* * * And, after being further advised in the premises, it is the opinion of the court that said exception should be sustained and that said cross-answer shows no valid cause of action against the city of Gainesville."

From this judgment the defendant Tackett has appealed.

Article 11, section 5, of the state Constitution, provides that a city having more than 5,000 inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, and further provides:

"But no tax for any purpose shall ever be lawful for any one year, which shall exceed two and one-half per cent. of the taxable property of such city, and no debt shall ever be created by any city, unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon."

Article 2, section 28, of the charter of the city of Gainesville, as found in Regular, First, and Second Called Sessions, 31st Legislature 1909, c. 81, provides:

"No contract shall ever be made which binds the city to pay for personal services to be rendered for any stated period of time; but all contracts involving a personal service shall be restricted to the doing of some particular

271 S.W.—20

act or thing, and upon its completion no further liability shall exist on the part of the city. * * *

"No contract shall be entered into until an appropriation has been made therefor, nor in excess of the amount appropriated, and all contracts, whenever practicable, shall be made upon specifications, and no contract shall be binding upon the city unless it has been signed by the mayor and the expense thereof charged to the proper appropriation, and whenever the contract charged to any appropriation equals the amount of said appropriation, no further contracts shall be signed by the mayor."

In the case of McNeil v. City of Waco, 89 Tex. 83, 33 S. W. 322, the Supreme Court had before it an attempted creation or incurring of a debt by a city without at the same time making the provision prescribed in article 11, sections 5, 7, of the Constitution of the state, for levying and collecting a sufficient tax to pay interest thereon and provide at least 2 per cent. as a sinking fund. Judge Denman, speaking for the court, said:

"We conclude that the word 'debt,' as used in the constitutional provisions above quoted, means any pecuniary obligation imposed by contract, except such as were at the date of the contract, within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year or out of some fund then within the immediate control of the corporation [citing cases].

"Prima facie every pecuniary obligation attempted to be created by contract is a debt within the meaning of the constitutional provisions above, and a party attempting to recover against the city thereon must allege the facts showing a compliance with the Constitution and statutes necessary to bind the city, or must allege such facts as bring the particular claim within the exception above stated in the definition of the word 'debt.' If it should appear from the pleadings or the face of the obligation that the subject of the contract was clearly a matter of ordinary expenditure, such as repairing streets or salary of an officer, this would be sufficient to bring it within the exception; for the prima facie presumption would be that such claim was intended to be paid out of the current revenues annually collected for payment of such claims, and it would not be presumed the city had attempted to make contracts in excess of its revenues for the year; but where, as in the case at bar, the subject of the contract is not one which the court can say as a matter of law is an item of ordinary expenditure, the petition, in order to bring it within the exception, must allege some additional fact, such as that there was at the date of the contract a fund in the treasury legally applicable thereto out of which the parties contemplated that such claim should be paid."

See Biddle v. City of Terrell, 82 Tex. 335, 18 S. W. 691; City of Terrell v. Dessaint, 71 Tex. 770, 9 S. W. 593; Toole v. First Nat. Bank (Tex. Civ. App.) 168 S. W. 425.

[1] Any obligation or debt created by a city government which cannot be discharged from

the revenues of the current year, and which matures at a period which would make it a charge upon the city revenues for future years, is a debt within the meaning of sections 5 and 7 of article 11 of the Constitution. See Ctiy of Terrell v. Dessaint, supra.

[2, 3] While it has been held that the employment of an architect, a doctor, lawyer, civil engineer, and others of special technical learning, is not controlled by statutes requiring bids in writing for services or work to be done (see Hunter v. Whiteaker & Washington [Tex. Civ. App.] 230 S. W. 1096; Miller v. Boyle, 43 Cal. App. 39, 184 P. 421; Harlem Gas Co. v. Mayor of N. Y., 33 N. Y. 309; Stratton v. Allegheny County, 245 Pa. 519, 91 A. 894; City of Houston v. Glover, 40 Tex. Civ. App. 177, 89 S. W. 425), and that the payment of such service may be made out of the current revenue of a city, yet we think that, if it were contemplated by appellant Tackett and the city council of Gainesville that his services should be paid for out of the current revenues, such facts should be alleged, and it should have been shown that there was on hand out of the revenues for that year a sufficient sum available to pay him for said services. City of Houston v. Glover, supra. We do not think the allegation that there was then on hand at the time of the making the contract of employment the sum of $27,000, derived from the sale of the bonds for the erection and equipment of the school building, was sufficient. While we are not prepared to say that an architect's fee and commission is not properly a part of the expenses of the erection of a public school building, yet we do not think that any more than the proportionate part of the amount derived from the sale of the bonds and then on hand, alleged to have been $27,-000, was available to pay such fee. The funds on hand were available for the erection and furnishing and equipment of the building as a whole, and we do not think that the amount so derived should be materially impaired by an allocation of a considerable part thereof to take care of the entire fee to be charged by the architect before the erection of the building was begun. It is shown in the pleadings of both parties that the estimates made and the cost of the building, without the furnishings, exceeded largely the funds available. Therefore the city council turned over to the school trustees the work of furnishing and equipping the building, and the latter agreed to pay therefor out of the current school fund, over the expenditure of which the city council had no apparent control.

[4] Inasmuch as the judgment recites that it appeared "from the admissions of the parties" and from the pleadings "that all the allegations of the petition are substantially true," we cannot say that such admissions of the appellant did not justify the trial court in refusing appellant the recovery and relief sought. It may be that appellant agreed that the facts showed that the city council did not have on hand any current funds available to pay his claim. If it did not have such current funds available, then there were no other funds out of which the same could have been paid.

The judgment is affirmed.

## On Appellant's Motion for Rehearing.

Appellant urges that it was not necessary for him in his cross-action to plead that at the time of the contract of employment that there was then on hand available funds out of the general revenue to pay the compensation agreed upon for his services; that, since the compensation of an architect may be paid out of the general revenue, as held in Hunter v. Whiteaker & Washington (Tex. Civ. App.) 230 S. W. 1096, and other cases cited in our original opinion, the presumption would obtain that there were sufficient funds out of the current revenues to pay said amount, and it would not be presumed that the city council had attempted to make contracts calling for payments in excess of the current funds. In support of this contention he refers us to language used by the Supreme Court in McNeil v. City of Waco, 89 Tex. 83, 33 S. W. 322, as follows:

"If it should appear from the pleadings or the face of the obligation that the subject of the contract was clearly a matter of ordinary expenditure, such as repairing streets or salary of an officer, this would be sufficient to bring it within the exception; for the prima facie presumption would be that such claim was intended to be paid out of the current revenues annually collected for payment of such claims, and it would not be presumed the city had attempted to make contracts in excess of its revenues for the year."

Appellant did in a general way allege that the city had on hand out of the general revenue sufficient funds to make up any deficiency of the proceeds of the bond issue to pay the cost of erecting and equipping the school building. His allegations as to this matter are as follows:

"If, however, the court should hold that said contracts in any way affected the legality of this defendant's said contract, then he alleges that at the time that such contracts were entered into it was understood and agreed by the parties thereto that, if the money arising from the bond issue theretofore provided, supplemented by other funds held by the city, which could legally be made available for that purpose, should not be sufficient to complete the said building and equipment according to their said contracts, that then such deficit should be made up by the issuance of warrants drawn against the current funds of said city for that year and against such other funds of said city as were legally subject to transference for such purpose, which made said con-

tracts legal and binding and not subject to the criticisms set out in plaintiffs' said original petition. And, in this connection, this defendant alleges that the city charter of the city of Gainesville, section 19, page 44, among other things, provides: 'That the city council shall have power to appropriate any money out of public funds of said city to carry out any of the powers granted in this act, and to accomplish the purpose of the provisions hereof.' In this connection defendant further alleges that the city of Gainesville, not only provided funds for the liquidation of the said contracts, but has actually paid same out, in full liquidation of all of the said contracts, save and except only the balance due this defendant, and he further alleges that said city has' provided and has set aside and now has on hand money sufficient to pay said indebtedness and available for that purpose."

But in his argument before this court as well as in his brief, and in his two propositions, he did not place any reliance on the existence at the time of the contract of any general fund available for the payment of his claim. He relied on the $27,000 then on hand from the bond issue, which, as shown in our original opinion, we did not think was available, except as to a proportionate amount thereof, to pay all of his charges for his services as architect. Moreover, .this contract was made June 27, 1921, and it was evidently contemplated that the building would not be completed until sometime in 1922. It is alleged in the petition for injunction that it was contemplated that the building would be completed about October 1, 1922, and appellant evidently concurred in this allegation, because in his prayer for relief he asked for interest on his judgment prayed for from that date.

[5] Any obligation or debt created by a city government which cannot be discharged from the revenues of the current year, and which matures at a period which make it a charge upon the revenues for future years, is a debt within the meaning of sections 5 and 7, art. 11, state Constitution; Terrell v. Dessaint, 71 Tex. 770, 9 S. W. 593; and is forbidden by said article of the Constitution, and article 2, section 28, City Charter of Gainesville, quoted in our original opinion.

For the reasons given, the motion for rehearing is overruled.