[Civ. No. 3089. First Appellate District, Division One.—August 26, 1919.]

## J. R. MILLER, Petitioner, v. THOMAS F. BOYLE, as Auditor, etc., Respondent.

[1] Municipal Corporations—San Francisco—Erection of School-house—Employment of Architect.—Under the charter of the city and county of San Francisco, the board of public works is not bound to engage architects exclusively as "employees," at stated monthly salaries, or at a given *per diem*, but may engage an architect by special contract, to prepare plans and specifications for use in connection with the erection of a schoolhouse at his own time and expense, for a stipulated fee based on the cost of the construction work to be planned and supervised by him.

[2] Id.—Accomplishment of Given Result—Means not Prescribed —Adoption of Reasonable Means — Powers of Municipal Boards.—When the charter permits a certain result to be accomplished, but does not prescribe the means, any reasonable, or suitable, means may be adopted. A municipal board not only has the powers expressly enumerated in the organic act, but also those implied powers which are necessary to the exercise of the powers expressly granted, except in the instances where such implied power is expressly, or impliedly, prohibited.

[3] Id.—Employment of Architect upon Prevailing Terms—Reasonable Means — Letting of Contract to Lowest Bidder — Charter not Violated.—The employment by the board of public works of the City and County of San Francisco of a duly authorized architect to prepare plans and specifications for use in connection with the erection of a schoolhouse, upon the terms and conditions prevailing in the community, constitutes the adoption of a reasonable and suitable means of accomplishing the required result, and is not in violation of the provisions of the charter requiring the awarding of contracts to lowest bidders.

[4] Id.—Receipt of Benefits by Municipality — Estoppel to Deny Liability.—Where the board of public works of the city and county of San Francisco, acting under the general power granted it to erect schoolhouses, hires an architect to prepare the necessary plans and specifications, such municipality, after it has received the benefit of his labor and expenditure of time and money, may not be heard to say that he should not be compensated as agreed.

---

4. Estoppel as applied to governmental bodies, note, 137 Am. St. Rep. 354.

PROCEEDING in Mandamus to compel the auditor of the City and County of San Francisco to approve a claim and demand for services as architect. Writ issued.

The facts are stated in the opinion of the court.

Cullinan & Hickey for Petitioner.

George Lull, City Attorney, for Respondent.

J. G. De Forest, *Amicus Curiae.*

WASTE, P. J.—This is an application by the petitioner, who is a duly licensed, certified, and authorized architect, for an alternative writ, to be directed to the defendant as auditor of the city and county of San Francisco, requiring him to approve a claim and demand of petitioner for the sum of $1,205.66, alleged to be due as fees for services as architect, rendered the city and county. The claim was properly presented and duly allowed and approved, until it reached the defendant, who declined to audit the same, upon the ground that the petitioner herein was not employed in accordance with the civil service provisions of the charter of the city and county of San Francisco, and that the claim is not for a regular, stated salary, or based on a *per diem.* He further contends that the contract for the preparation of the plans and specifications of the schoolhouse, and supervision of such construction, should have been let to the lowest bidder, in accordance with the provisions of sections 14, 15, 16, 17, and 18 of chapter 1 of article VI of the charter. The facts behind the application are admitted to be correctly set forth in the petition. The matter is submitted to this court on questions of law, raised by the demurrer of respondent.

It appears that by ordinance of the board of supervisors of the city and county, the board of public works is authorized, in its discretion, to obtain plans, drawings, specifications, and details for the erection of public buildings for the city and county of San Francisco, to be erected under the supervision and direction of the board of public works, and for that purpose to engage the services of architects, either by selection or by competition. The method of competition in case the architects, for the purposes specified in the ordinance,

are selected by competition is to be determined by the same board. Likewise, that board is authorized to pay for the preparation of details, plans, and drawings and necessary supervision of the work of construction a sum which (including the cost of the preparation of the contract, plans, and specifications) shall not exceed six per centum of the entire cost of the building to be constructed. The ordinance further authorizes the board of works to enter into contracts with architects for the purpose of engaging the services therein contemplated. Another provision of the ordinance declares that nothing therein contained shall be deemed, or construed, as preventing the board of public works from appointing a city architect, or such persons as that board may deem necessary, to perform architectural services for the city and county, or to inspect and supervise the construction of public bulidings, it being the intent and purpose of the ordinance, so it declares, to place in the discretion of the board of public works the manner and method of obtaining plans and specifications for public buildings, and the supervision of the construction thereof.

The board of education of the city, after proceedings duly and regularly had in that behalf, requested the board of public works to prepare plans and specifications for a certain schoolhouse, to be known as the Jefferson School, and to be constructed in and by the city and county. The board of public works thereupon, by resolution duly adopted, appointed petitioner, the architect, to prepare plans and specifications for such schoolhouse at an estimated cost of construction of approximately one hundred thousand dollars, and in and by said resolution it was provided that the fee of petitioner for such services should be six per cent òf the total cost of the construction of the said schoolhouse, and that the services of the petitioner should include the necessary supervision of construction. It was further agreed by and between the board of public works, acting for the city, and petitioner, prior to his entering into his work, that the fee of six per cent should be paid at certain times and amounts, one-fifth of the fee to be paid upon completion and approval of the preliminary studies for the plans and specifications of the schoolhouse. It was likewise agreed that until the actual cost of the construction of the schoolhouse should be ascer-

tained the payments on account of petitioner's fee were to be based on the estimated cost of the construction thereof.

Thereupon, petitioner prepared the preliminary studies for the plans and specifications of said schoolhouse. In the preparation of these studies for the plans and specifications petitioner used his own private office and materials and employed draftsmen and assistants, paying the cost of said materials, and the wages of said draftsmen and assistants, out of his private funds. The estimated cost of the construction of the school, when the preliminary studies for its plans and specifications were completed, was $100,471.66. These preliminary studies for the plans and specifications were delivered to and accepted and approved by the board of education and the board of public works. Thereupon, petitioner presented, as before stated, to the proper officers of the city and county his bill and demand, in proper form, for $1,205.66. That claim the auditor refuses to approve.

It appears as a fact in the case that the fee of six per cent of the actual cost of the construction of the Jefferson School is not greater than the compensation paid to architects on similar employment in the city and county, and is the reasonable value of such services petitioner agreed to render. The fee of six per cent, and the times and amounts of progress payments, and the mode of payment, are the usual and customary mode, times, and amounts, respectively, of paying architects in the city and county of San Francisco, whether said architects be employed by the said city and county or by private persons.

The board of public works of the city and county of San Francisco has charge, superintendence, and control, under such ordinances as are from time to time adopted by the supervisors, of the construction of any and all public buildings and structures under plans duly approved by the various departments, including all schoolhouses and fire department buildings, and the repair and maintenance of any and all buildings and structures owned by the city and county. (Charter of the City and County of San Francisco, subd. 6, sec. 9, c. 1, art. VI.) The same board has power to employ such clerks, superintendents, inspectors, engineers, surveyors, deputies, architects, and workmen as shall be necessary to a proper discharge of their duties under the article of the charter, and to fix their compensation; but no compensation

of any of said persons shall be greater than is paid in the case of similar employments. (Charter, sec. 3, c. 1, art. VI.) [1] The first question to be decided in this case is, whether, by this language of the charter, the board of works is bound to engage architects exclusively as "employees," at stated monthly salaries, or at a given *per diem*, or whether it may engage an architect by special contract, to prepare plans and specifications at his own time and expense, for a stipulated fee based on the cost of the construction work to be planned and supervised by him.

The board of public works may employ any number of architects, as it employs all needed clerical forces and workmen, necessary to a proper discharge of the duties imposed by the charter. It may also fix their compensation on a monthly basis. (Charter, sec. 1, c. 4, art. III.) Such architects, when thus regularly employed, would, in our judgment, become employees of the city, and subject to the civil service provisions of the charter, except in the case of the city architect, with which case we are not now dealing. However, we do not find anything in the charter provisions, or in the general law, as we understand it, which will prevent the board of public works, in its discretion, securing the services of skillful architects, in any special case, to prepare such plans and specifications as may be needed. [2] When the charter permits a certain result to be accomplished, but does not prescribe the means, any reasonable, or suitable, means may be adopted. A municipal board not only has the powers expressly enumerated in the organic act, but also those implied powers which are necessary to the exercise of the powers expressly granted, except in the instances where such implied power is expressly, or impliedly, prohibited. (*Harris* v. *Gibbins*, 114 Cal. 418–421, [46 Pac. 292].)

The right to employ an architect and prepare plans and specifications, therefore, was incident to the general power of the city to erect schoolhouses. (Dillon on Municipal Corporations, sec. 701; *Spalding* v. *Chamberlain & Co.*, 130 Ga. 649, [61 S. E. 533].) We find nothing in the charter which makes the employment of architects at a regular fixed salary, or *per diem*, the exclusive method by which the city might carry out this incidental power. The board of public works, clothed with general authority to construct and acting under the ordinance of the board of supervisors, had power to ac-

complish a certain result, which could not be accomplished by it without the employment of other agencies, to wit, of architects, to prepare the plans and specifications for such erection. In this case, the charter not directly prescribing that such plans and specifications could only be prepared by such architects as might be regularly employed by the board of public works, it must be construed to afford opportunity for the adoption, as was said in *Harris* **v.** *Gibbins, supra,* "of any reasonable, and suitable, means."

[3] The claim of respondent that the contract between the board of public works and the petitioner should only have been awarded after compliance with the provisions of the charter relative to letting contracts to the lowest bidder has been disposed of adversely to his contention. The same cases also seem to establish that the board of public works, in employing a duly authorized architect, and upon the terms and conditions prevailing in the community, were adopting reasonable and suitable means, these decisions holding that the engagement of an architect to prepare plans and otherwise render services in connection with the erection of city buildings on a percentage basis is not in violation of the provisions of municipal charters requiring a written contract with the lowest and best bidders. "The reasonableness of such construction," said the court in one of these cases, "is strikingly illustrated in the present case. An architect is an artist. His work requires taste, skill, and technical learning and ability of a rare kind. Advertising might bring many bids, but it is beyond peradventure that the lowest bidder might be the least capable and most inexperienced, and absolutely unacceptable. As well advertise for a lawyer, or civil engineer for the city, and intrust its vast affairs and important interests to the one who would work for the least money." (*Cudell* v. *Cleveland,* 16 Ohio C. Rep. (N. S.) 374; *Stratton* v. *Allegheny Co. et al.,* 245 Pa. St. 519, [91 Atl. 894]; *City of Newport News* v. *Potter,* 122 Fed. 321, [58 C. C. A. 483]; *City of Houston* v. *Glover,* 40 Tex. Civ. App. 177, [89 S. W. 425].)

It being admitted that the terms and conditions of compensation provided in the contract entered into between the petitioner and the city are just and reasonable, and are the usual terms and conditions covering the rendition of similar

services in this community, we are of the opinion that the petitioner is entitled to the relief sought.

[4]  Petitioner is also invoking the doctrine of estoppel, claiming that the city and county of San Francisco has received the benefit of his labor and expenditure of time and money, and should not now be heard to say that he should not be compensated.  In view of the conclusion we have already announced, it is not necessary to rest our decision upon that contention, but we are of the opinion that what we said in a very recent case (*Warren Bros. Co.* v. *Boyle,* 42 Cal. App. 246, [183 Pac. 706]), does apply to the facts of this case.

Let the writ issue as prayed for.

Bardin, J., *pro tem.*, and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 23, 1919.

All the Justices concurred.