[S. F. No. 17298. In Bank. July 5, 1946.]

CLYDE C. KENNEDY, Petitioner, v. HARRY D. ROSS, as Controller, etc., Respondent.

John L. McNab and Walter E. Hettman for Petitioner.

Allen G. Wright and S. J. McAtee as Amici Curiae on behalf of Petitioner.

John J. O'Toole, City Attorney, and Walker Peddicord, Deputy City Attorney, for Respondent.

Harold Ropers and H. Ward Dawson, Jr., as Amici Curiae on behalf of Respondent.

SHENK, J.—The petitioner, Clyde C. Kennedy, seeks the writ of mandate directing the respondent, as Controller of the City and County of San Francisco, to issue a warrant on the city treasurer in the sum of $10,000.

The Director of Public Works of the City and County of San Francisco on September 24, 1945, entered into a written contract with the petitioner, a consulting engineer, whereby the latter, employing and maintaining a staff of professional engineers and operating a chemical and biological testing laboratory in San Francisco, agreed to prepare and furnish engineering and architectural plans, specifications, estimates of cost, and contract documents required for a proposed North Point Sewage and Sludge Treatment and Disposal Plant, and appurtenant works and buildings, to be located in the Islais

Creek district. Under the contract compensation for the petitioner's services is to be $77,000 payable in installments, a first payment of $10,000 to be made upon completion of the plot, circulation and landscaping drawings. All architectural and clerical services are to be furnished by the petitioner and the assistants in his employ. The contract was approved by the chief administrative officer of the city, and by the city attorney as to form.

On October 30, 1945, the respondent controller certified that he had set aside the sum of $77,000 from the unexpended and unapplied balance in a total appropriation of $1,355,000 to the Department of Public Works for the North Point sewage replacement and construction, to be applied to the expenditure called for by the contract.

On January 26, 1946, the petitioner completed the portion of the plans which called for the payment of $10,000. The director of public works approved the plans and the claim, and a request for the payment of $10,000 was presented to the respondent. In the meantime, in December, 1945, a complaint had been filed against the respondent to restrain him from making any payment under the Kennedy contract on the ground that the contract had not been authorized by the board of supervisors, and that the petitioner had not been exempted by the civil service commission pursuant to certain provisions of the city charter. The respondent refused payment because of the pendency of the injunction suit. Thereupon this proceeding was commenced.

The respondent's demurrer to the petition constitutes his return to the alternative writ. The allegations of the petition are therefore admitted and only issues of law are presented.

It is conceded by the respondent that if the contract is legal mandamus is the proper remedy. (*Puterbaugh* v. *Wadham*, 162 Cal. 611, 613 [123 P. 804]; see *San Francisco* v. *Boyd*, 17 Cal.2d 606 [110 P.2d 1036]; Code Civ. Proc., § 1085.) The problems involved have been fully presented by the parties and amici curiae.

It is contended by the respondent and supporting amici curiae that the contract is invalid for failure to comply with section 142(4) of the 1932 Charter of the City and County of San Francisco (Stats. 1931, p. 2973, as amended.) Sections 140 et seq. of the charter establish a civil service commission and civil service employment system. Section 142 requires that all positions in the several departments and

offices of the city be included in the classified civil service and be filled from lists of eligibles. Subdivision 4 exempts "persons employed in positions in any department for expert professional temporary services," provided the exemption for the specified period of temporary service is by an order of the civil service commission. Prior to October 30, 1945, the respondent submitted the contract to the civil service commission of the city for an order of exemption. The commission submitted the matter to the city attorney for advice. The latter rendered his opinion to the effect that under the terms of the contract the petitioner was an independent contractor, and that neither he nor his assistants would be subject to the civil service provisions of the charter. He expressly reserved his opinion concerning the power to engage engineering services outside the office of the city engineer and his staff. The commission thereupon transmitted to the respondent in writing its conclusion that the petitioner was an independent contractor, that he and his staff and employees were not subject to the civil service provisions of the charter, that the commission was without jurisdiction in the matter, and that an order of exemption was unnecessary.

The conclusions of the city attorney and the commission are correct. Section 142 of the charter refers to and includes in the classified civil service "all positions in all departments and offices" of the city, and exempts "persons employed in positions in any department for expert temporary services." Under the contract, the petitioner was not appointed to nor does he hold a position in any department or office of the city. The contract calls for his expert professional services on other than a permanent basis, but it does not follow that he is thereby employed in a position in any department of the city. The fact is otherwise. No position, temporary or permanent, in any department, was thereby created as contemplated by section 143 of the charter. The petitioner was engaged to do a specific expert professional task for a stated consideration. "Positions" in "departments and offices" of the city connote an employment to render services at a salary paid periodically and are governed by the salary standardization and related provisions of the charter, also invoked by the respondent. (§§ 71, 73, 141, 142, 150 and 151.)

The provisions of the charter do not foreclose the authorized agency from entering into contracts with individuals for the performance of professional services as independent con-

tractors. Employment at a fixed salary or per diem basis is not the exclusive method by which the city may exercise its power to procure the services of experts. (*Miller* v. *Boyle,* 43 Cal.App. 39, 43 [184 P. 421].) Section 142(4) and related sections were examined in *San Francisco* v. *Boyd, supra,* (17 Cal.2d at p. 619), where this court said: "A reading of the entire text of said several sections indicates clearly that it was the intention of the framers of the charter that civil service should apply only to persons *employed in permanent positions* in municipal departments to the end that public service should be free from political shifting and control resulting from changes in administration. If section 142 were to be given the literal application suggested by respondent, it would be impossible for the municipality to make an independent contract with any person or corporation to render an extraordinary service or to make surveys with a view of legislation on behalf of the municipality." Here the conclusion must be that the petitioner and his assistants do not by the contract become city employees in either permanent or temporary positions in the sense intended by the charter provisions. They are therefore not subject to classified civil service, nor to the charter provisions standardizing salaries, wages or compensation for permanent or temporary employment, and an order of exemption was not required.

The foregoing conclusion is based on the assumption that the engagement outside the list of eligibles otherwise is legal and that the services for which the petitioner was engaged are not such as could adequately be rendered by an existing department of the city. In *State Compensation Ins. Fund.* v. *Riley,* 9 Cal.2d 126, 131 [69 P.2d 985, 111 A.L.R. 1503], this court rejected as a conclusive test of the lawful exercise of the power to make an independent contract that the person involved was an independent contractor. It was held in the Boyd case and recognized in the Rily case that the appropriate agency is empowered in proper cases to engage the services of an expert in a field covered by an existing department without a resulting illegal duplication of the functions and duties of existing officers and departments.

In this proceeding it appears that the sewage disposal problem was of much concern to the people of San Francisco prior to the outbreak of the recent war. The influx of people, with the consequent overcrowding and shortage in housing, greatly overtaxed the already inadequate sewage system. The existing

disposal system is stated to be obsolete and a menace to the public health and welfare. The designing of modern sewage disposal plants has developed into a matter of scientific treatment, involving an understanding of chemistry and bacteriology, as well as modern scientific mechanical methods. The designer of such a plant operates in a specialized field and is a scientist and expert having a high degree of training in that field. The record shows that the petitioner, who is duly licensed under the laws of this state, is a skilled engineer, outstanding in his specialized field, and his services cannot be duplicated; that, with his associates, he is best qualified to furnish the plans and specifications for the sludge treatment and disposal plant. The qualifications and foundation for competence are highly individualized and from the showing they may be said to be not generally within the scope of any existing civic department.

The city engineer is an appointee of the director of public works and holds office at the pleasure of the latter. He has such power in making surveys, plats and certificates as is given by law to city engineers and to county surveyors, with the same validity, force and effect. (Charter, § 106.) Apart from those duties, the city engineering staff has designed, constructed and supervised the construction of many of the city's engineering projects, including the Richmond-Sunset Sewage Treatment Plant, construction of which commenced in 1937. It also appears that the sewage reduction plant which will be a part of the North Point system will be planned by the city engineer. But this is not to say that scientific progress up to the present time, through the period of a second world war, has not developed a specialized technical training for the preparation of plans for modern sewage treatment and disposal which is not available in the existing city engineering staff. If the procurement of such expert services was within the proper sphere of action by the director of public works, it must be concluded on the facts presented that the responsibility rested upon that official and the chief administrative officer to whom he is answerable to determine the qualifications and requirements of the expert who should undertake the preparation of plans and specifications for the proposed improvement. There is no showing of lack of good faith or of arbitrary exercise of the power and discretion vested in the appropriate agency. No ground for interference in the selection of the petitioner to perform such services as an inde-

pendent contractor has been shown. (See, also, *Reid* v. *Boyle*, 43 Cal.App. 34 [184 P. 423], and *Miller* v. *Boyle, supra*, 43 Cal.App. 39.)

But it is claimed that action by the board of supervisors was necessary to authorize the contract pursuant to an appropriate resolution or ordinance. This contention necessitates an examination of the division of powers among the boards and departments of the city and the nature of the power exercised in the particular case.

By section 2 of the charter the city possesses all rights and powers appropriate to autonomous rule, subject only to the restrictions and limitations expressly included in the charter. That section provides that the specification or enumeration of particular powers shall not be exclusive. A city which has thus availed itself of the 1914 amendment of section 6, article XI, of the Constitution, has full control over its own affairs whether or not the charter specifically provides for the particular power sought to be exercised, so long as the power is constitutionally exercised within the limitations or restrictions placed in the charter; and the mere enumeration of powers conferred does not constitute a limitation or restriction. (*West Coast Adv. Co.* v. *San Francisco*, 14 Cal.2d 516, 521-523 [95 P.2d. 138].)

It is apparent from the provisions of the new charter that the framers intended to and did formulate a change in the usual concentration of control in the administration of municipal affairs, and thereby provided for a decentralization of powers. Only those powers of the city which are not reserved to the people or delegated to other officials, boards or commissions, are vested in the board of supervisors, to be exercised as provided in the charter. (§ 9.) That section also provides that the supervisors may, by ordinance, confer on any officer, board or commission such other and additional powers as may be deemed advisable.

The mayor is the chief executive officer (§ 25), but a chief administrative officer is appointed by him (§ 59), who has the duty to exercise supervision and control over all administrative departments placed under his jurisdiction (§ 60), among which are the Department of Finance and Records, the Purchasing Department, the Real Estate Department, the Department of Public Works, and others (§ 61). Certain other departments, boards and commissions, such as police, fire, library, art, park and recreation, are placed under the jurisdiction of the mayor (§§ 35 et seq.).

The Department of Public Works is in charge of the director of public works. The director of public works succeeded to the powers and duties of the board of public works, which latter was abolished (§§ 61, 106.) Section 23 continued the powers and duties of the various departments as established prior to the execution of the new (1932) charter, except as otherwise provided; and section 61 provides that the Department of Public Works as so continued shall be administered by the director of public works, who shall be appointed by the chief administrative officer and hold office at his pleasure. By section 20 the director of public works is responsible to the chief administrative officer for the administration of his department.

Section 95 of the charter relates to ''Contracts, Public Works and Purchasing Contracts.'' It provides that the construction, reconstruction or repair of public buildings, streets, utilities or other public works or improvements, with exceptions not material here, shall be done by contract. The section also states that ''Any public work or improvement executed by the city, other than routine repair work, shall be authorized by the chief administrative officer or by the heads of departments not under the chief administrative officer, only after detailed estimates have been prepared and submitted by the heads of the department concerned. . . . The head of the department in charge of or responsible for the work for which a contract is to be let . . . shall let such contract to the lowest reliable and responsible bidder. . . . The officer responsible for the awarding of any such contract shall require from all bidders information. . . . The department head . . . shall have power to sign such contract. . . . If such contract is for any public work or improvement, it shall require the joint approval of the department head and the chief administrative officer relative to departments under his jurisdiction, or the signature of the department head and the approval by resolution of the board or commission concerned for departments not under the chief administrative officer.''

From the foregoing it is seen that the framers of the charter intended a division or separation of powers as between the board of supervisors, and the executive and administrative heads and departments. To make the matter more explicit, section 22 provides that except for the purpose of inquiry the mayor and the supervisors shall deal with the administrative service for which the chief administrative officer is re-

sponsible, solely through such officer, and that except for the purpose of inquiry, each department, board or commission, in the conduct of the administrative affairs under its control, shall deal with such matters solely through its chief executive officer. "Neither the board of supervisors," the section provides, "nor its committees, nor any of its members shall dictate, suggest or interfere with appointments, promotions, compensations, disciplinary actions, contracts, requisitions for purchases or other administrative recommendations or actions of the chief administrative officer, or of department heads under the chief administrative officer, or under the respective boards and commissions. . . ." Interference is deemed to be official misconduct.

The intention of the framers is emphasized in Francis V. Keesling's "San Francisco Charter of 1931" (April, 1933), page 45, where, in reporting the debate of the Freeholders regarding the limitation of the powers of the supervisors it is stated: "It was the definite intention to effectively deprive the Board of Supervisors of all administrative powers." This is further borne out by the provisions governing the budget and appropriations.

Section 69 et seq. provide for the budget and fiscal procedure. The fiscal year commences on the first day of July. The executive of each department or office of the city is required to prepare an annual budget estimate to be acted on by the board or commission not later than the first of March. The chief administrative officer obtains the budget estimates from the heads of departments subject to his control, and after adjustments or revisions, transmits them to the controller, who in turn submits them to the mayor. Public hearings are held by the mayor and he may make changes within specified limits. Not later than the first of May the mayor is required to transmit a consolidated budget estimate to the board of supervisors, together with a draft of the annual appropriation ordinance based on the proposed budget which is thereupon published as required for ordinances. After public hearing, and between the 15th of May and the first of June, the board of supervisors is required to adopt the budget estimates as submitted or amended and pass the necessary appropriation ordinance. An amended budget is required to be readvertised prior to final passage. Veto power is given the mayor, and power to act thereon to the supervisors. (§ 72.)

Section 72 then provides: "Subject to the restrictions

hereinbefore in this section included, the several amounts of estimated revenue and proposed expenditures contained in the annual appropriation ordinance as adopted by the board of supervisors shall be and become appropriated for the ensuing fiscal year to and for the several departments, bureaus, offices, utilities, boards or commissions, and for the purposes specified, and each department for which an expenditure appropriation has been made shall be authorized to use the money so appropriated for the purposes specified in the appropriation ordinances, and within the limits of the appropriation. The appropriation ordinance shall constitute the authority for the controller to set up the required revenue and expenditure accounts. . . .''

The foregoing provisions do not of course authorize an expenditure pursuant to a contract which otherwise is not in compliance with charter requirements. Section 85 permits the controller to withhold approval of any claim on the ground of its illegality, and section 86 subjects him to liability for the amount of a claim illegally approved, allowed or paid. As pointed out in *Millholen* v. *Riley*, 211 Cal. 29 [293 P. 69], the duty to function includes by implication of law the power to properly apply the funds appropriated for the purpose in the absence of provision to the contrary. The provisions of section 72, together with the provisions of the charter vesting sole control for the administration of the functions delegated to the Department of Public Works subject to the authorization of the chief administrative officer, are persuasive that no further control is vested in the supervisors over the expenditure of funds appropriated to that department after the appropriation ordinance has been adopted. All of the budget procedure was duly complied with in the present instance and $1,355,000 was appropriated for sewers including North Point Sewage, Disposal Plant and Outfall. The contract here involved was the first to be entered into looking to the fulfillment of the purposes for which the appropriation was made. There is no question of the validity of the appropriation, and the controller has duly set aside the amount required by the contract from unapplied funds in the appropriation.

The respondent points out that in the case of *San Francisco* v. *Boyd, supra* (17 Cal.2d 606), the contract for the services of the expert was made by the board of supervisors. The subject matter of the contract was the engagement of an engineering expert to investigate and report to the supervisors

on the transit problem of the city. No construction work or improvement was contemplated thereby. It was solely a matter of inquiry by the board. This court upheld the exercise of the general power of the board in that regard although it was recognized that such power had possibly been specially delegated to another board or officer. It was said at page 617: "While it is true that the charter provides for an independence of the various departments of the city in the performance of their respective duties, and while it is true that to the various commissions certain duties have been delegated, yet there is nothing in the language delegating such duties and functions . . . which suggests a limitation upon the powers of the board of supervisors to plan, study and legislate for civic betterment and improved conditions of municipal affairs." No contract had been made by any department to which power in respect to the matter had been delegated by the charter, and no question of unlawful interference by the supervisors was raised.

 The respondent also relies on section 106 (*cf.* § 112), providing that "All examinations, plans and estimates required by the supervisors in connection with any public improvement, exclusive of those to be made by the public utilities commission, shall be made by the director of public works, and he shall, when requested to do so, furnish information and data for the use of the supervisors." The respondent would apply those provisions as a limitation upon the power otherwise clearly vested in the director of public works. But properly applied they place additional duties upon the director to perform those things when required or requested by the supervisors so to do. Any intention to curtail the powers otherwise delegated to the director of public works may not be read into that section.

 The foregoing sufficiently answers the respondent's contention that certain sections of the charter and section 4041.34 of the Political Code vest the power in the board of supervisors to authorize the contract for special services, as a residuary power. Section 2 of the charter provides that the exercise of all rights and powers of the city and county when not prescribed in the charter shall be as provided by ordinance or resolution of the board of supervisors. Section 3 provides that where a procedure for exercising any right or power is provided by statute, the statutory procedure shall be followed unless a different procedure is provided in the charter or by

ordinance under charter authority. Those provisions are repeated in section 107 relative to specified street, sewer and other improvements and to the performance of any other public work or improvement under the jurisdiction of the Department of Public Works. Section 4041.34 of the Political Code provides that boards of supervisors in their respective counties shall have power to contract for special services and advice in financial, economic, accounting, engineering, legal or administrative matters by persons specially trained. Those provisions may be said to govern to the effect here contended only when the charter does not otherwise provide. (Charter, § 3.) Section 95 of the same instrument provides the procedure for the execution of any public work or improvement, namely, by contract. There is no serious contention that the section does not vest in the director of public works, subject to the approval of the chief administrative officer, the power to contract for the construction of public works and improvements. Plans and specifications are essential to the construction of any such work or improvement. The contract here involved covers only the preparatory plans and specifications which are necessary before the construction of the contemplated project can be commenced. Having the unquestioned express power to let contracts for the construction of the improvement, the power to obtain the plans and specifications therefor follows as a necessary incident. (See *Crawford* v. *Imperial Irrigation Dist.*, 200 Cal. 318, 334 [253 P. 725] ; *Miller* v. *Boyle, supra,* 43 Cal.App. at p. 43 ; *Powell* v. *City and County of San Francisco,* 62 Cal.App.2d 291, 296 [144 P.2d 617] ; *San Francisco* v. *Boyd, supra,* 17 Cal.2d at p. 618, citing *State Compensation Ins. Fund* v. *Riley, supra,* 9 Cal.2d 126.) Since, therefore, the charter prescribes the authority and procedure for the improvement and the contract here contemplated, the provisions of section 4041.34 of the Political Code are inapplicable.

█ The respondent also contends that although the contract had the approval of the chief administrative officer, as required, nevertheless it is void because the director of public works did not comply with the provisions of section 95 of the charter requiring that all contracts be let to the lowest reliable and responsible bidder. Section 22 provides that the supervisors, and each board or commission concerning the affairs of its own department, shall deal with administrative matters only in the manner provided by the charter. The provisions of section 95 require that the construction, reconstruction, or

repair of public works or improvements, shall be done by contract which shall be let by the head of the department in charge of the work to the lowest reliable and responsible bidder not less than ten days after advertising by publication for two consecutive days for sealed proposals for the work or improvement. The board of supervisors is empowered to establish procedure whereby the several city and county departments may file sealed bids for the execution of any work to be performed under the contract.

It is true, as asserted by the respondent, that the mode prescribed for the exercise of power by a public officer is the measure of the power. (*Zottman* v. *San Francisco*, 20 Cal. 96, 103 [81 Am.Dec. 96]; *Los Angeles Dredging Co.* v. *Long Beach*, 210 Cal. 348, 353 [291 P. 839, 71 A.L.R. 161].) It is also true that the framers of the charter were at pains to require that contracts for the construction of public works should be subject to competitive bidding, and it is assumed that all contracts for the construction of the improvement will conform to that procedure. But it does not follow that strict compliance with that requirement must be maintained in procuring expert services to furnish plans and specifications for the construction. In *Los Angeles Dredging Co.* v. *Long Beach, supra* (210 Cal. at p. 354), it was recognized that there are exceptions to the requirement that contracts must be let under competitive bidding, the court saying: ''The first exception is founded on the fact that sometimes it is undesirable or impossible to advertise for bids for particular work. In such cases the statutory requirement is deemed not to apply. In 2 Dillon on Municipal Corporations, 1199, section 802, the law is thus stated: 'It has been held that where competitive proposals work an incongruity and are unavailing as affecting the final result, or where they do not produce any advantage . . . or it is practically impossible to obtain what is required and observe such forms, a statute requiring competitive bidding does not apply.' Our courts have approved this doctrine.'' In McQuillin on Municipal Corporations, volume 2, second edition revised, page 1182, section 1292, it is stated with citation of cases: ''Provisions as to competitive bidding have been held not to apply to contracts for personal services depending upon the peculiar skill or ability of the individual, such as the services of . . . an attorney at law, a superintendent or architect . . . or a consulting and supervising engineer. And generally the requirement does not apply to the employment of a

professional man, in which case the authorities have a discretion as to his qualifications." In *Miller* v. *Boyle, supra* (43 Cal.App. 39), the following was quoted with approval at page 44: "An architect is an artist. His work requires taste, skill, and technical learning and ability of a rare kind. Advertising might bring many bids, but it is beyond peradventure that the lowest bidder might be the least capable and most inexperienced, and absolutely unacceptable. As well advertise for a lawyer, or civil engineer for the city, and intrust its vast affairs and important interests to the one who would work for the least money." Without further discussion, this court in *San Francisco* v. *Boyd, supra* (17 Cal. 2d) said at page 620 that "The employment of a person who is highly and technically skilled in his science or profession is one which may properly be made without competitive bidding."

No question is raised as to the power of the city under its charter to proceed in the matter of sewage reduction, treatment and disposal (see *City of Oakland* v. *Williams,* 15 Cal. 2d 542, at p. 550 [103 P.2d 168]) and the record shows that since the adoption of the new charter the Department of Public Works, the chief administrative officer, and the board of supervisors have so construed its provisions as not to require that contracts for expert and professional services be subject to the civil service provisions or the procedure of competitive bidding. The practice has been for the director of public works to make such contracts with independent contractors upon the approval of the chief administrative officer and without advertising for bids. There is no language in the charter which may be said to require a different method of procedure.

From what has been said it follows that the contract involved is valid and the petitioner is entitled to the relief sought.

Let the peremptory writ issue as prayed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.