[Civ. No. 56242. Second Dist., Div. Four. Mar. 25, 1980.]

GENEVIEVE GRAYDON, Plaintiff and Appellant, v.
PASADENA REDEVELOPMENT AGENCY et al.,
Defendants and Respondents;
ERNEST W. HAHN, INC., Real Party in Interest and Respondent.

632

**COUNSEL**

Sheldon B. Chernove for Plaintiff and Appellant.

Hahn & Hahn, David K. Robinson, Jacobs, Weiser, Kane, Ballmer & Berkman, Eugene B. Jacobs, Robert P. Berkman and T. Brent Hawkins for Defendants and Respondents.

Barrett, Stearns, Collins, Gleason & Kinney and William N. Willens for Real Party in Interest and Respondent.

OPINION

McCLOSKY, J.*—This is an appeal from a judgment and order denying a writ of mandate and awarding costs of suit to respondent, Ernest W. Hahn, Inc. (hereafter Hahn).

Respondent the Pasadena Redevelopment Agency (hereafter sometimes Agency and sometimes PRA), following many studies, plans and negotiations, entered into an agreement in 1975 with a developer (H-CHH Associates, a partnership comprised of respondent Hahn and Carter Hale Hawley Stores, Inc.) for the development in Pasadena's blighted central business district of a major retail shopping center.

To finance the public cost of the retail shopping center development for acquisition of land, demolition of buildings, relocation of residents and businesses, and construction of required parking facilities comprised of a subterranean garage beneath the shopping center and two above ground parking structures, the Agency sold tax allocation bonds in the principal amount of approximately $58 million.

On November 2, 1977, at a public meeting at which appellant was present, Agency's governing body awarded and authorized execution of a negotiated contract for construction of the subterranean garage for the project to Hahn for a maximum price not to exceed $11,939,466 based on a commencement date of November 15, 1977. The subterranean garage is a publicly owned garage. The retail center above it will be owned by the developer constructed in air rights purchased by the developer over the garage. In its brief, respondent alleges that as of October 8, 1979 (the date of the brief), the subterranean garage was then approximately 80 percent complete.

The central issue presented on appeal is whether this action is barred by the limitation provisions of Code of Civil Procedure sections 860 through 870. (Throughout this opinion, all references to code sections will be to the Code of Civil Procedure unless otherwise noted.)

Appellant's petition for mandamus filed on January 26, 1978, alleged, among other things, that the contract for the construction of the subterranean garage for the retail center was awarded without competitive bidding in violation of the provisions of Health and Safety Code

*Assigned by the Chairperson of the Judicial Council.

section 33422;[1] that the contract was favorable to Hahn and unfavorable to the taxpaying public; that payment pursuant to the contract is unauthorized and a misuse of public funds. Appellant sought a writ of mandamus which would direct the Agency to advertise for competitive bids before awarding a contract for the construction of the subterranean garage; would declare that the contract between the Agency and Hahn was illegal; and would prohibit respondents from disbursing funds in accordance with the contract.

Appellant contends that as she framed this action in mandate, the validation requirements provided in sections 860 through 870 are inapplicable. Appellant's challenge focuses upon the procedure utilized by the Agency in obtaining the contract. In sum, she claims that sections 860 through 870 do not apply to this case.

The respondents' answers alleged that competitive bidding was not required in this case for the construction of the subterranean garage because of the integrated nature of that garage and the major retail center; that the purposes of competitive bidding would not be accomplished and because construction of that garage without competitive bidding would be advantageous and in the public interest. Additionally, respondents alleged as affirmative defenses, among other things, that the validity of the plan and contract awarded was previously adjudicated in a prior lawsuit by appellant (Graydon v. Board of Directors et al.); that appellant's claims were barred by her laches; that she was equitably estopped from asserting those claims; and that this action by appellant is barred because it was not filed within the time prescribed under section 860 et seq., made applicable by Government Code section 53511, and because she failed to comply with the requirements of section 860 et seq., with respect to the notice requirements thereof.

As a general rule, competitive bidding for public entities is a mandatory requirement as provided by statute, charter or ordinance (see here Health & Saf. Code, § 33422). However, there are certain well recognized exceptions to said rule. One exception is where the nature of the subject of the contract is such that competitive proposals would be unavailing or would not produce an advantage, and the advertisement for competitive bid would thus be undesirable, impractical, or

---

[1]The relevant portion of Health and Safety Code section 33422 then provided: "Any work of grading, clearing, demolition, or construction in excess of two thousand five hundred dollars ($2,500) undertaken by the agency shall be done by contract after competitive bids."

impossible. (*Kennedy* v. *Ross* (1946) 28 Cal.2d 569 [170 P.2d 904]; *San Francisco* v. *Boyd* (1941) 17 Cal.2d 606 [110 P.2d 1036]; *Los Angeles Dredging Co.* v. *Long Beach* (1930) 210 Cal. 348 [291 P. 839, 71 A.L.R. 161]; *Los Angeles G. & E. Corp.* v. *Los Angeles* (1922) 188 Cal. 307 [205 P. 125]; *Meakin* v. *Steveland, Inc.* (1977) 68 Cal.App.3d 490 [137 Cal.Rptr. 359]; *County of Riverside* v. *Whitlock* (1972) 22 Cal.App.3d 863 [99 Cal.Rptr. 710]; *Hiller* v. *City of Los Angeles* (1961) 197 Cal.App.2d 685 [17 Cal.Rptr. 579]; *Orange County Water Dist.* v. *Bennett* (1958) 156 Cal.App.2d 745 [320 P.2d 536]; *Miller* v. *Boyle* (1919) 43 Cal.App. 39 [184 P. 421].)

■ The rationale for the adoption of the above exception is found in the purposes of the provisions requiring competitive bidding in letting public contracts. Those purposes are to guard against favoritism, improvidence, extravagance, fraud and corruption; to prevent the waste of public funds; and to obtain the best economic result for the public. (10 McQuillin, Municipal Corporations (3d ed.) § 29.29.) However, the competitive bid requirement is to be construed fairly and reasonably with sole reference to the public interest and in light of the purposes to be accomplished. (*City of Inglewood-L.A. County Civic Center Auth.* v. *Superior Court* (1972) 7 Cal.3d 861 [103 Cal.Rptr. 689, 500 P.2d 601]; *Cyr* v. *White* (1947) 83 Cal.App.2d 22 [187 P.2d 834], 10 McQuillin, Municipal Corporations (3d ed.) § 29.29.) Therefore, it has been held that where competitive proposals work an incongruity and are unavailing as affecting the final result, or where competitive proposals do not produce any advantage, or where it is practically impossible to obtain what is required and to observe such form, competitive bidding is not applicable. (2 Dillon, Municipal Corporations (5th ed. 1911) § 802.)

This principle has been held applicable in California decisions in a variety of situations involving both the purchase of services and products and the construction of public improvements and buildings where it has appeared that competitive bidding would be incongruous or would not result in any advantage to the public entity in efforts to contract for the greatest public benefit. It has also been applied in fact situations in which the governmental entity has entered into contracts for personal services depending upon a peculiar skill or ability (*Kennedy* v. *Ross, supra*, 28 Cal.2d 569; *San Francisco* v. *Boyd, supra*, 17 Cal.2d 606; *Miller* v. *Boyle, supra*, 43 Cal.App. 39); contracts for the purchase of patented products (*Hodgeman* v. *City of San Diego* (1942) 53 Cal.

App.2d 610 [128 P.2d 412]); contracts for the provision of services or the construction of public improvements by a government regulated monopoly (*Los Angeles G. & E. Corp.* v. *Los Angeles, supra*, 188 Cal. 307; *County of Riverside* v. *Whitlock, supra*, 22 Cal.App.3d 863); contracts for experimental or unique products and/or services (*Hiller* v. *City of Los Angeles, supra*, 197 Cal.App.2d 685); and actions or contracts for the acquisition or disposition of property for a particular use and with a special value to one person (*Orange County Water Dist.* v. *Bennett, supra*, 156 Cal.App.2d 745; *Meakin* v. *Steveland, Inc., supra*, 68 Cal.App.3d 490).

In the case at bench, the trial court determined the matter and gave notice of its intended decision by minute order of April 3, 1978, as follows:

"Matter, heretofore submitted on March 20, 1978, is now determined.

"The court, having studied all of the evidence including, without limitation, evidence bearing on respondent's statutory purpose, the manner in which it is and has been obliged to accomplish that purpose, and the manner in which that purpose must be and has been financed, finds that the contract here in question is such that respondent's ability to operate would be substantially impaired absent a prompt validating procedure as to such contract, within the meaning of *Walters* v. *County of Plumas*, 61 Cal.App.3d 460 (1976). *Accordingly, Chapter 9 of Title 10 of Part 2 of the Code of Civil Procedure (commencing with Section 860) applies, and this action is barred by the 60 day limitations of sections 863 and 860.*

"*Having reached that conclusion, the court makes no determinations of any other aspect of the case, except that respondent is not estopped from asserting said 60 day bar.*

"This order shall constitute notice of the court's intended decision to enter judgment for respondent, whose counsel shall prepare, serve and submit a proposed form of judgment and, if requested, proposed findings of fact and conclusions of law. The clerk is directed to mail a copy of this order to counsel for all appearing parties this date." (Italics added.)

Findings of fact and conclusions of law were signed and filed on June 15, 1978, over appellant's objections. Appellant's requested special findings were refused.

The findings of fact trace the history of this redevelopment project and of the financing and letting of the contracts regarding it. The findings go on with particularity stating:

"21. *On November 2, 1977, the governing body of the PRA at its regular public meeting awarded and authorized execution of a negotiated contract* [i.e., the contract the validity of which is questioned in this action] *for construction of the subterranean garage to Ernest W. Hahn, Inc.* not to exceed a guaranteed maximum price of $11,939,466 according to the terms of said contract. Said maximum price was based on the commencement of construction date of November 15, 1977, and the amount of $11,335,360 provided for in the First Implementation Agreement plus the sum of $595,068 which sum represents $56,676.80 per month for the period between January 1, 1977, and November 15, 1977. *Petitioner was present at said PRA regular meeting of November 2, 1977, and was thus aware of the award and authorization of said contract.* The award of the contract was made in reliance upon a written opinion dated October 4, 1977, of the Law Offices of Eugene B. Jacobs, General Counsel to the Agency, that the competitive bidding requirements of Health and Safety Code Section 33422 were not applicable to the construction contract for the subterranean garage which is to be the support for and integrated with and provide access to the Retail Center. (Italics added.)

"22. On December 15, 1977, the PRA sold and awarded $26 million tax allocation bonds to finance the construction by the PRA of the public parking facilities for the Retail Center. The official statement with respect to said bonds stated that the contract identified in Finding No. 21 had been awarded in reliance of the opinion identified in Finding No. 21. The bonds are to be paid partially from tax increments generated by the Retail Center which will begin to flow when the Retail Center is constructed.

"23. The PRA's statutory purpose, pursuant to the Community Redevelopment Law, the Plan and the purpose and intent of the City of Pasadena with respect to the Plan and the Downtown Redevelopment Project is to eliminate the conditions of blight in the Downtown Rede-

velopment Project Area and to redevelop said area pursuant to the Plan. *The contract identified in Finding No. 21 is directly linked to and is part of the PRA's [Agency's] method of financing the public costs of the Retail Center and the redevelopment of the Downtown Redevelopment Project Area, the purpose of the PRA in the implementation of the Plan and the manner in which such purpose of the PRA must be financed and has been financed. The ability of the PRA to operate and accomplish its statutory purpose and the purposes of the Plan would be substantially impaired unless the contract identified in Finding No. 21 is subject to a prompt validation procedure.* (Italics added.)

"24. The contract identified in Finding No. 21 is a contract to the validation procedures contained in Chapter 9 (commencing with Section 860) of Article 10 of Division 1 of the Code of Civil Procedure. Any action by an interested person challenging the validity of said contract must be brought within 60 days after the PRA awarded and authorized the contract identified in Finding No. 21 which was on November 2, 1977.

"25. There is no evidence of any acts of the PRA which would estop the PRA from asserting the bar of the 60 day statute of limitation under Code of Civil Procedure Section 860 and 863.

"26. This action was commenced on January 26, 1978, which is 85 days after the award, on November 2, 1977, of the contract identified in Finding No. 21."

We proceed now to discuss the applicable code sections.

Government Code section 53511 provides that a local agency may bring an action to determine the validity of its bonds, warrants, contracts and evidence of indebtedness pursuant to chapter 9 (commencing with § 860) of title 10 of part 1 of the Code of Civil Procedure. Government Code section 53510 defines local agency as any city, county, city and county, public district or any public or municipal corporation, public agency or public authority. Agency is a local agency within the meaning of Government Code section 53510.

Section 860 provides that a public agency may bring an action to determine the validity of any matter which was authorized to be

determined pursuant to chapter 9 of title 10 of part 1 of the Code of Civil Procedure. Section 864 provides that for the purposes of said chapter 9 of title 10 of part 1 of the Code of Civil Procedure, *contracts shall be deemed to be in existence upon the date of their authorization and that contracts shall be deemed authorized as of the date of adoption by the governing agency of the public agency of a resolution approving the contract and authorizing its execution.*

Section 863 provides that if no action has been brought by the public agency pursuant to chapter 9 of title 10 of part 2 of the Code of Civil Procedure to determine the validity of a matter within 60 days after the existence of a matter, any interested person may bring an action, within the time prescribed by section 860 (i.e., 60 days), to determine the validity of the matter.

Appellant contends that reversal is required because of the failure of the trial court to find on a material fact after a request for special findings on that fact. Appellant's contention is that, as no resolution or ordinance was adopted with respect to the authorization or execution of the contract here in question, the limitation period did not start to run. The transcript of the hearing before the trial court of March 7, 1978, wherein Michael V. McIntire appeared as attorney for appellant, contains the following colloquy:

"MR. McINTIRE: Excuse me, Your Honor. May I interrupt for a moment with respect to one of those facts.

"The resolution authorizing the contract was passed on November 2, but the contract, which is Exhibit 1 to the respondent's ·answer, discloses that the contract was signed on February 8.

"THE COURT: All right.

"MR. JACOBS [attorney for respondent]: That's right, Your Honor.

"THE COURT: If you are all in agreement as to that, then I will amend my statement.

"Do you agree with that fact?

"MR. McINTIRE: Yes, Your Honor. I have no reason to dispute it.

"THE COURT: All right.

"MR. JACOBS: It was actually signed at that point. It was signed as of November 2. The authorization took place on November 2.

"THE COURT: Well, the resolution was adopted November 2.

"MR. JACOBS: November 2, yes, Your Honor.

"MR. BERKMAN: Yes, Your Honor.

"MR. McINTIRE: Yes, Your Honor."

Even if counsel for appellant was wrong in his March 7, 1978, statement that there was a resolution passed November 2, 1977, authorizing the contract here in dispute and the matter was passed only by motion of the governing body of the Agency, the result would be the same as if a formal resolution or ordinance had been passed.

The aforementioned finding number 21 that "On November 2, 1977, the governing body of the PRA [Agency] at its regular public meeting awarded and authorized execution of a negotiated contract for construction of the subterranean garage to Ernest W. Hahn, Inc. . . ." is correctly dispositive of the issue. In *Smith* v. *Mt. Diablo Unified Sch. Dist.* (1976) 56 Cal.App.3d 412 [128 Cal. Rptr. 572], the Court of Appeal held (at pp. 416-417) that a motion passed by the governing body of a public entity was the requisite approval of the contract and authorization of its execution, "as a motion, is the equivalent of a resolution under such circumstances" in the following language: "At the time the written bid was accepted by the Board at its January 29 meeting, a contract was formed. (*United States* v. *Purcell Envelope Co.*, 249 U.S. 313, 319-320 [63 L.Ed. 620, 624-625, 39 S.Ct. 300]; *Berkeley Unified Sch. Dist.* v. *James I. Barnes Const. Co.*, 112 F.Supp. 396, 398-399; *City of Susanville* v. *Lee C. Hess Co.*, 45 Cal.2d 684, 694 [290 P.2d 520]; 15 Ops. Cal. Atty. Gen. 123, 125.) *The motion of the Board, passed by a vote of four to one, was therefore the requisite approval of the contract and authorization of its execution, as a motion, is the equivalent of a resolution under such circumstances.* (5 McQuillin, Municipal Corporations (1969 rev. vol.) § 15.02, pp. 43-45, § 15.06, pp. 56-58, § 15.08, pp. 63-65; cf. *City of Sausalito* v. *County of Marin*, 12 Cal.App.3d 550, 565-566 [90 Cal.Rptr. 843]; *McPherson* v. *Richards*, 134 Cal.App. 462, 466 [25 P.2d 534].)" (Italics added.)

 We here hold, as the court did in *Smith v. Mt. Diablo Unified Sch. Dist., supra*, 56 Cal.App.3d 412, that the award and authorization for the execution of the contract at the November 2, 1977, regular public meeting of Agency's governing body was the equivalent of a resolution under such circumstances. Alternatively, appellant's attorney conceded at the March 7, 1978, hearing in the trial court that the resolution was passed, and thus in either event we hold that no material fact was omitted from the findings of fact regarding the award and authorization of the contract in question.

 We next consider the applicability of the validation sections (860 through 870) as a bar to this action. The award and authorization was made at the regular public meeting of Agency's governing body on November 2, 1977, at which meeting appellant was present and aware of the award and authorization of this contract. If sections 860 through 871 apply to contracts of this nature, the contract was in existence as of November 2, 1977, within the meaning of section 864, which provides in pertinent part: "...contracts...shall be deemed to be in existence upon their authorization...and contracts shall be deemed authorized as of the date of adoption by the governing body of the public agency of a resolution or ordinance approving the contract and authorizing its execution."

The heart of the dispute between appellant and respondent focuses on whether this is a "contract" of the type intended to be covered by the provisions of sections 860, 863, 864 and 869.

*Smith v. Mt. Diablo Unified Sch. Dist., supra*, 56 Cal.App.3d 412, analyzing the type of contracts intended to be covered by sections 860 through 871, reviews the applicable cases and comments as follows (at pp. 418-420): "Only two cases have previously analyzed the precise statutes in issue here. *Phillips v. Seely*, 43 Cal.App.3d 104 [117 Cal.Rptr. 863], was a taxpayers' action challenging the validity of a contract between a county board of supervisors and a private party for the rendition of legal services. The court unanimously held that 'the contract for rendition of legal services to the county by Warren was not subject to sections 860 and 863,' in spite of the language of Government Code section 53511. (43 Cal.App.3d at pp. 111, 112.)

"This result in *Phillips* rested almost entirely upon certain dicta in the Supreme Court opinion in *City of Ontario v. Superior Court*, 2

Cal.3d 335 [85 Cal.Rptr. 149, 466 P.2d 693]. In that decision, the court considered at length the question presented in the instant action, but decided the case on the ground that the 'complex and debatable' issue of applicability at least constituted the 'good cause' required by section 863 of the Code of Civil Procedure for relief from default (for failure to comply with the summons procedure of the validating statutes). (2 Cal.3d at pp. 345-347.) Although not controlling, the dicta is entitled to substantial weight, particularly in view of its thoroughness. (*San Joaquin etc. Irr. Co.* v. *Stanislaus*, 155 Cal. 21, 28 [99 Cal.Rptr. 365]; *Granger* v. *Sherriff*, 133 Cal. 416, 417 [65 P. 873]; *In re Olson*, 37 Cal.App.3d 783, 789 [112 Cal.Rptr. 579].)

"It is clear that the language of Government Code section 53511, while perhaps appearing unambiguous and unqualified, cannot be so deemed in view of the legislative background. It is true that where the meaning of a statute is plain and unambiguous, and there is no uncertainty as to legislative intent, there is no need for construction and courts should not indulge in it. (*Caminetti* v. *Pac. Mutual L. Ins. Co.*, 22 Cal.2d 344, 354 [139 P.2d 908].) However, '"The literal meaning of the words of a statute may be disregarded...to give effect to manifest purposes that, in the light of the statute's legislative history, appear from its provisions considered as a whole."' (*County of Sacramento* v. *Hickman*, 66 Cal.2d 841, 849, fn. 6 [59 Cal.Rptr. 609, 428 P.2d 593], quoting *Silver* v. *Brown*, 63 Cal.2d 841, 845 [48 Cal.Rptr. 609, 409 P.2d 689].)

"The Supreme Court enumerated in *City of Ontario*, various aspects of the legislative history suggesting inapplicability of the validating statutes to contracts of the type here in question. Certain other features of that historical background, however, suggest an opposite interpretation. Most of the statutes enacted simultaneously with the validating act included language involving bonds and assessments. Some, however, referred to validation of contracts; although most of these latter concerned contracts with other—often federal—agencies, some involved contracts of acquisition and construction.

"Thus, Water Code section 43730 was enacted (Stats. 1961, ch. 1531, p. 3367), and its reference to 'contracts...or the taking of any other action by the district or by the board' clearly encompasses powers previously granted to enter into contracts of construction or improvement. (Wat. Code, §§ 43300-43309.) Streets and Highways Code

section 5265 (Stats. 1961, ch. 1523, p. 3361), likewise relating to 'the validity of any contract,' has reference to prior sections dealing with contracts for construction, and for acquisition of materials, supplies and equipment. (Sts. & Hy. Code, § 5240 et seq.) Similarly, Streets and Highways Code section 10601 (as amended by Stats. 1961, ch. 1526, p. 3364) relates in part to contracts for construction of improvements. (Sts. & Hy. Code, § 10500 et seq.) Similar language in the numerous uncodified Water Act provisions enacted simultaneously with Code of Civil Procedure sections 860-870 reaffirms the conclusion that, at least in certain instances, the Legislature understood the word 'contracts' in section 864 to include matters other than 'the limited topic of a local agency's financial obligations.' (*City of Ontario, supra*, 2 Cal.3d at p. 344.)

"This is not dispositive of the issue, however, for it must be apparent that 'contracts' as used in section 864 had no static meaning. Rather, the term must be defined by the legislative context in which it appears *in particular follow-up enactments.* [Italics in original.] Thus, although the unqualified word 'contract' is utilized in a number of the statutes created simultaneously with the validating act, it is clear that in some of these sections no broad meaning is intended or even possible. (See e.g., Wat. Code, §§ 23225, 35855.) The Supreme Court's admonition that 'under well-known canons of statutory interpretation, [the language of Gov. Code, § 53511]...should ordinarily be given the same meaning as it had in the earlier statute [§ 864]' (*City of Ontario, supra, 2 Cal.3d at p. 343*) *is therefore of little guidance in construing Government Code section 53511.*" (Italics added.)

*Walters* v. *County of Plumas* (1976) 61 Cal.App.3d 460 [132 Cal.Rptr. 174], involved an action by a taxpayer against a county arising out of the implementation of a solid waste disposal program. Plaintiff's complaint sought to invalidate franchises for impropriety in bidding and award procedures and by its third cause of action to set aside a guarantee agreement by the county to assist the franchisees in financing the purchase of heavy equipment to be used in carrying out the purpose of the plan. After holding chapter 9 (i.e., §§ 860 through 871) inapplicable to the matters pleaded in other causes of action, the *Walters* court at page 468 considered the third cause of action stating: "We perceive the essential difference between those actions which ought and those which ought not to come under chapter 9 to be the extent to which the lack of a prompt validating procedure will impair the public

agency's ability to operate. The fact that litigation may be pending or forthcoming drastically affects the marketability of public bonds; it has little effect upon such matters as a contract with a public defender or the purchase of a computer. We feel that the possibility of future litigation is very likely to have a chilling effect upon potential third party lenders, thus resulting in higher interest rates or even the total denial of credit, either of which might well impair the county's ability to maintain an adequate waste disposal program. Accordingly, we hold that Code of Civil Procedure sections 860-870 are applicable to the third cause of action."

The trial court in the case at bench considered the evidence of respondents' statutory purpose, the manner in which it had been and is obliged to carry out its purpose and the manner in which that purpose must be, and is, being financed, found that the questioned contract is such that respondents' ability to operate would be substantially impaired absent a prompt validating procedure as to such contract, and accordingly, held that chapter 9 of title 10 of part 2 of the Code of Civil Procedure (commencing with § 860) applies, and that this action is barred by the 60-day limitations of sections 860 and 863.

We agree. The negotiated contract for the construction of the subterranean garage is an integral part of the whole method of financing the public costs associated with the retail center. The financing is by bonds issued by the Agency to be paid from tax increments allocated to the Agency. The record indicates that if completion of the retail center was delayed beyond March 1, 1980, because of delay in commencement of construction, a loss of tax increment revenue of $1,556,000 would result for the 1981-1982 fiscal year. There was evidence that if the contract were competitively bid, a delay of approximately 14 months would have resulted. It is uncontroverted that a considerable delay would have resulted. The ability of the Agency to pay its bonds, dependent in large part upon the flow of tax increment monies resulting from the completion of the retail center, was thus directly linked to the award of the questioned contract.

A considerable delay, and certainly one of 14 months, would impair the ability of the Agency to pay the bonds and to operate and carry out the redevelopment plan. The contract is inextricably bound to the Agency's financial obligations. On December 15, 1977 (approximately six weeks after awarding this contract), the official statement with re-

spect to the bonds in the amount of $26 million sold and awarded on December 15, 1977, stated that the contract had been authorized and awarded on November 2, 1977, based upon the opinion of the Agency's general counsel that the bidding requirements were not applicable to the contract for the construction of the subterranean garage. These bonds were intimately and inextricably bound up with the award of this contract. Delay in the completion of the retail center because of the delay which would inevitably have resulted if the contract had been competitively bid and would have had a direct bearing on the financial ability of Agency to meet its financial obligations and statutory purpose.

These conclusions compel the result we reach here. The lack of a prompt validating procedure would impair this public agency's ability to operate and carry out its statutory purpose. We hold that chapter 9 of title 10 of part 2 of the Code of Civil Procedure (commencing with § 860) applies and that this action, which was not commenced until January 26, 1978, more than 60 days after the contract came into existence on November 2, 1977, is barred by the 60-day limitation provisions of sections 860 and 863.

Respondents are not estopped from asserting the bar of the 60-day limitations. Appellant was present at the regular public meeting of the governing body of Agency, when the contract was awarded and its execution authorized. She knew of its existence on that date and there is no evidence in the record to show that she delayed filing her petition for the writ in reliance on anything said or done by respondents.

Appellant's motion to tax costs is not well taken. Appellant contends the costs arose as a result of the trial court's refusal to allow testimony in open court.

At all times relevant, rule 106 of the Manual of Policy and Procedures for the Writs and Receivers Department of the Superior Court of Los Angeles County provided that mandamus proceedings brought under section 1085 "involve presentation of evidence for the first time at the mandamus trial" (appellant's counsel having stated in open court on March 7, 1978, that this was a mandamus proceeding under § 1085). Rule 106 provided further that: "Usually, evidence counsel contemplates eliciting at the trial can be obtained by way of declarations, affidavits or stipulations... and because of the limited time available to

hear these matters in Department 85, it is requested that counsel so obtain the evidence, if at all possible. . . . This procedure can save both counsel and the court a great deal of time." This rule was available to counsel for appellant well before March 7, 1978.

When the method of taking evidence by way of declarations, affidavits and depositions was announced by Judge Phillips, no objection was made by counsel to this procedure.

Further, and most significantly, the respondents, not appellant, were the prevailing parties. (§ 1033.)

The foregoing determinations obviate the necessity of discussing the other issues raised.

The judgment and order are affirmed.

No party shall recover costs from the other in this court.

Kingsley, Acting P. J., and Wong, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 4, 1980. Mosk, J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.